Charlene DAVIS, Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA et al., Appellees.

No. 20499.

United States Court of Appeals Fifth Circuit.

April 28, 1964.

Rehearing Denied June 1, 1964.

Ernest L. Sample, Jim Vollers, Beaumont, Tex., for appellant.

Quentin Keith, Keith, Mehaffy & Weber, Beaumont, Tex., for appellee Prudential Ins. Co. of America.

Paul R. Owens, Sexton & Owens, Orange, Tex., for appellees Edna L. and Vernon L. Davis.

Before HUTCHESON and BROWN, Circuit Judges, and SIMPSON, District Judge.

HUTCHESON, Circuit Judge.

This is an appeal from a judgment in an interpleader action [1] and various cross actions.[2] The determination of these disputes requires the application of the Texas community property laws to the proceeds of an insurance policy. Trial was had without a jury, and the court entered judgment in favor of the named beneficiary for the sum deposited in the registry of the court. This was in error since the change of beneficiary from deceased's wife to his mother, becoming a completed gift of the proceeds of a community owned policy on the death of the insured, constituted a transfer of community property in fraud of the decedent's wife.

Glen V. Davis and Charlene E. Davis were married March 11, 1960. On November 14, 1960 the Prudential Insurance Company of America (Prudential) issued a policy of group life insurance on the life of Glen V. Davis, the face value of which was $9000.00. This amount was increased to $11,000.00 on April 1, 1961. The policy provided for additional accidental death benefits equal to the face value of the policy. It was stipulated that Prudential paid a portion of the premiums and the remainder was paid out of the earnings of Glen V. Davis. No one disputes that the policy was purchased with community property. The policy was one of term insurance and had no cash surrender value.

Charlene Davis was the designated beneficiary of the policy until August 29, 1961, when Glen V. Davis named his mother, Edna L. Davis, as Beneficiary. On August 8, 1961, Charlene Davis had filed suit for divorce and custody of their child. A temporary restraining order [3] was issued on August 11, 1961, preventing the alienation of all or any portion of the community estate. A hearing on Charlene Davis' application for an award of alimony *pendente lite* was set for August 17, 1961. This hearing was passed on defendant's motion to August 25, 1961, and on August 24, 1961 the hearing was passed on the court's motion until August 29, 1961. On August 29, 1961 a hearing was held at which Charlene Davis, Glen V. Davis, and his mother, Edna Davis, were present. Alimony *pendente lite* was fixed at that time, and the following notation was made on the Divorce Docket, "All restraining orders to remain in force". It was on this day after the hearing that Davis changed the beneficiary of his policy. No further proceedings were had in the divorce action.

The court found that during the period of the divorce proceedings terminating with the death of Glen V. Davis the debts of the community exceeded the community assets.[4]

Glen V. Davis died an accidental death on October 19, 1961, from injuries sustained in an automobile wreck. Edna Davis made due proof of loss and claimed the proceeds of the policy. Prudential paid Edna Davis $11,000.00, the face amount of the policy, and withheld payment of the accidental death benefits

---

1. The interpleader action meets the requirement of Fed.R.Civ.P. 22(1).

2. The district court had jurisdiction over such ancillary suits. Fid. & Cas. Co. v. Wilson, 105 F.Supp. 454 (E.D.S.C.1952).

3. Tex.R.Civ.P. 680.

4. This finding did not attribute any value to the insurance policy nor consider the proceeds includable in the determination. The finding was based on exhibits which show debts of $617.00 and assets of $300.00.

pending an investigation into the circumstances surrounding the death of the insured. The district court found that Prudential paid the $11,000.00, though it had actual knowledge that Charlene Davis might assert a claim to the proceeds.[5] Charlene Davis through attorneys made further demands upon Prudential for the proceeds of the policy. Prudential determined that accidental death benefits were payable and filed this interpleader action to resolve conflicting claims to the remaining amount due under the policy. Charlene Davis answered the interpleader action admitting the conflicting claims to the $11,000.00 and cross-claimed against Prudential and in the alternative against Edna Davis for the $11,000.00 representing the face amount of the policy. Prudential claimed against Edna Davis in the event it would be required to pay Charlene Davis $22,000.00. Edna Davis cross-claimed against Charlene Davis asserting her right to the entire proceeds.

In an opinion reported at 213 F. Supp. 235, the district court held that the change of beneficiary did not constitute a fraud upon the rights of Charlene Davis, nor was the change prohibited by the restraining order issued in the divorce proceedings. The district court ordered that the money in the registry of the court be paid to Edna Davis after deductions for costs and Prudential's attorney's fees. No complaint is made as to the payment of attorney's fees and that portion of the district court's judgment is affirmed.

Charlene Davis asserts her right to the entire proceeds on what may be condensed into two grounds. One, the designation of Edna Davis as beneficiary, and the subsequent completed gift to her of the proceeds of the policy was ineffectual as a transfer of community property since it was in fraud of the wife's rights, and therefore beyond the managerial powers that a husband has over community property. Two, the designation and by implication the transfer were in violation of the restraining order issued in the divorce proceedings and, therefore, void. We will consider the last ground first.

There is no merit in the contention that this change of beneficiary and transfer of proceeds were void because in violation of injunctive orders. As will be discussed fully below, the transaction was one involving community property and would, therefore, fall within the ban of the restraining order if the order was in force at the death of the husband. For the purposes of appellant's argument we will assume that some injunctive restraint on Glen Davis' power of alienating community property was effected by the order of August 29, 1961, "All restraining orders to remain in force".[6]

Appellant has cited no authority, nor have we been able to discover any, which indicates that an effect of an injunction issued under the circumstances here present is to void the prohibited transfer of property so that the party in whose favor the injunction was issued has merely to plead and prove the

---

5. Prudential may not, and does not, rely in this court on the provisions of the Texas Insurance Code that provide that an insurance company shall be discharged from all liability under a policy once they pay the named beneficiary absent receipt "by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds or a part thereof". Art. 3.48, Tex. Ins.Code, Tex.Ann.Civil Stat. Cf. John Hancock Mutual Life Ins. v. Sally, 163 S.W.2d 651 (Tex.Civ.App.1942).

6. If this were merely an extension of a temporary restraining order, in the absence of a showing that Glen Davis agreed that it be extended for more than ten days it would have terminated at the expiration of such time. Tex.R.Civ.P. 680; Corpus Christi Linen Service v. Wright, 255 S.W.2d 324 (Tex.Civ.App. 1953). We will assume that the notation of the Divorce Docket indicated the issuance of a temporary injunction. Tex. R.Civ.P. 681, 683, 687. So treated, restraint would have been in effect during the period in issue. The record of the divorce proceedings is not before us and we are, therefore, prevented from determining the exact nature of the order in question.

fact of the injunction and of the transfer to recover against a transferee. Injunctions may be enforced by contempt proceedings, damage actions, or actions to enforce a penalty included within the injunctive order,[7] but they do not, under the circumstances here, operate to void the transfer they prohibit in a suit by the protected party against the transferee.

The appellant's first ground, that the transfer constituted a transfer of community property in fraud of the rights of the wife is meritorious, though we do not agree that once fraud has been established the wife is entitled to the entire proceeds.

■ The Texas opinions have long recognized that the husband as community manager has the power to make gifts of community property to third persons, absent fraud on the rights of his wife.[8] The difficulty in applying this rule, as in applying most other rules of law, comes in determining the meaning of its key words, property and fraud. How inclusive are these terms? Is the bundle of rights characterized as an insurance policy property or something else? Is fraud to be given a strict or a liberal construction?

■ The most difficult of these problems, the nature of the rights represented by an insurance policy purchased with community funds has long been bothersome to the courts. The Texas decisions in this area have been considered irreconcilable by some,[9] while others profess to see a thread of consistency ordering the apparent chaos.[10] The Texas Supreme Court, in Brown v. Lee, Tex., 371 S.W.2d 694 (1963) has saved us from another excursion into this morass of decisions and revisions. Brown v. Lee was a suit to determine title to the proceeds of several insurance policies purchased with community property. The insured husband and the beneficiary wife died in a common disaster. The contestants were the heirs of the husband and wife. The court held the right to receive insurance proceeds at a future but uncertain date is property.[11] This is property

"in the nature of a chose in action which matures at the death of the insured. * * * When purchased with community funds, the ownership of the unmatured chose logically belongs to the community, unless it has been irrevocably given away under the terms of the policy, i. e., where the purchase has, without fraud, foreclosed any right to change the named beneficiary * * *. The proceeds at maturity are likewise community in character, except where the named beneficiary is in fact surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured." [12]

The policy purchased by the Davises was one in which Glen Davis retained the right to change the beneficiary until he died. The right to receive the insurance proceeds in the future was community property until the gift of the matured chose was completed by the death of the insured. The gift was, therefore, one of community property.

■ The value of the gift is not measured by the premiums paid after the change of beneficiary nor is the gift valueless since the policy had no cash surrender value. The assertion of both of

7. 43 C.J.S. Injunctions, § 271 (1945).

8. Warthan v. Haynes, 155 Tex. 413, 288 S.W.2d 481 (1956); Volunteer St. Life Ins. Company v. Hardin, 145 Tex. 245, 197 S.W.2d 105 (1946); Stamler v. Coe, 15 Tex. 211 (1855).

9. Huie, Texas Institutes, Business & Family Planning p. 119, Proc. 5th Ann. Taxation Conf. (1957).

10. Commissioner of Int. Rev. v. Chase Manhattan Bank, 259 F.2d 231 (5th Cir. 1958).

11. The court relied on the 1957 amendment to Art. 23(1), Tex.Ann.Civ.Stat. which included within the definition of property "insurance policies and the effects thereof."

12. Brown v. Lee, Tex., 371 S.W.2d 694, 696 (1963).

these points, the first by Edna Davis and the latter by Prudential, mistakenly place the time of the giving at the time of the change of beneficiary. The value of the gift must be measured at the time the gift was completed, i. e., at the death of the insured. At that time the value of the gift was equal to the value of the proceeds of the policy.[13]

The issue now is to determine whether a gift of the proceeds of this insurance policy under the circumstances of this case constitutes a fraud on the rights of Charlene Davis. The district court concluded that the change in beneficiary did not constitute a fraud on the rights of the wife but this is not the end of the inquiry. The proper inquiry is whether the course of action culminating in the completed gift of the proceeds was fraudulent.

■ The district court found that the change in beneficiary was made with the intent to deprive Charlene Davis of any benefits under the policy that might accrue in the future. There is no evidence that this intent ever changed. We are of the opinion that if this is a finding of primary intent or purpose, then a transfer made with this intent is in fraud of the rights of the wife. In Dillard v. Dillard, 341 S.W.2d 668 (Tex.Civ.App.1961, error ref'd n. r. e.), the husband conveyed community property to certain members of his family while he and his wife were separated and divorce proceedings were probable. The court approved the definition of a fraudulent conveyance as one which had as its object or effect depriving another of valuable property rights. Similar instructions were approved in Shaw v. Shaw, 28 S.W.2d 173 (Tex.Civ.App.1930, error dism'd). In Moore v. California-Western Life Ins. Co., 67 S.W.2d 932 (Tex.Civ.App.1934, error dism'd) Moore deserted his wife

and subsequently bought an insurance policy with community funds. He insured his life and made his mother beneficiary. In a dispute between his wife and his mother over the proceeds of the policy, the jury found this to have been a fraudulent transaction. The issue on appeal was the sufficiency of the evidence to support the finding of fraud. The court held that the evidence was sufficient and in fact that the conclusion was inevitable that he had determined to abandon his wife and deprive her of all interest in the community property. In these cases fraudulent transfers were found and where it is not so stated it is proper to assume that the intent to deprive the wife of her interest in the community which the courts held was a fraudulent intent was the *primary* intent of the husband in making the transfer. In our case the court found no fraud. It is arguable that the finding of intent was no more than a finding that Glen Davis had the same harmless intent that all who make an effective transfer of jointly owned property have, namely that the joint owner no longer have any interest in the property. Rather than attempt to divine the meaning of this finding we choose to decide the case on the doctrine of constructive fraud.

■ As this court pointed out in Kemp v. Metropolitan Life Ins. Co., 205 F.2d 857 (5th Cir. 1953) it is not necessary to find actual fraudulent intent in order that a gift of community property to a third person be found in fraud of the rights of the wife, fraudulent intent may be presumed from the facts to the transfer. As it is put in 1 Speer, Law of Marital Rights in Texas, Sec. 186 at 303 (1961), "A husband's conveyance or disposition of the community may be a legal fraud upon the wife's rights though not intended to wrong her. * * *

13. Huie, Community Property Laws as Applied to Life Insurance, 18 Tex.L.Rev. 121, 148 (1940). See Brown v. Brown, 282 S.W.2d 90 (Tex.Civ.App.1955, error ref'd n.r.e.); Aaron v. Aaron, 173 S.W. 2d 310 (Tex.Civ.App.1943, error ref'd w.o.m.); Allen v. Brewster, 172 S.W.2d

192 (Tex.Civ.App.1943, rev'd on other grounds 142 Tex. 127, 176 S.W.2d 311 (1944); Moore v. California-Western States Life Ins. Co., 67 S.W.2d 932 (Tex. Civ.App.1934, error dism'd); Kemp v. Metropolitan Life Ins. Co., 205 F.2d 857 (5th Cir.1953).

While he may give away community property so long as it is done without the intention of defrauding his wife, as where the gift is moderate or reasonable in amount, excessive or capricious gifts may be regarded as a fraud in her right. * * * " The Texas courts have long recognized this doctrine. They have held it applicable to unjustified, excessive, and capricious gifts to strangers to the community,[14] and have found no fraud applying the doctrine where the wife has been made whole by gifts of the husband's separate property equal to his gifts of community property;[15] and where the gifts are reasonable in relationship to the community, proper as provisions for husband's children, and the wife's share of the community was sufficient to care for her until her death.[16] The approval of the instruction noted above in Dillard v. Dillard constitutes a recognition of the concept of constructive fraud.

■ In this case, while Glen Davis and his wife, Charlene, were separated, and divorce proceedings were in progress, he designated his mother as beneficiary of an insurance policy on his life paid for with community funds. He was living with his mother at the time and until his death. At the time of his death the gift to his mother was worth $22,000.00, over 98 percent of the total worth of the community. There was no separate property. There is no evidence that there was a need to make his mother beneficiary of the policy. Both his mother and father were employed, his mother had a sizable savings account and approximately $3000.00 worth of insurance on her son's life. Under these circumstances the gift of the entire proceeds to Edna Davis constituted a capricious and excessive gift of community property which was in constructive fraud of his wife's rights.

■ It is now necessary to determine the extent of Charlene Davis' recovery. She prays for recovery of the entire proceeds, but she is entitled [17] to recover only her community interest in the proceeds. In Aaron v. Aaron, 173 S. W.2d 310 (Tex.Civ.App.1943, error ref'd w. o. m.), a dispute arose between deceased's wife and his mother, the named beneficiary of his insurance policies, as to the right to the proceeds. The jury found that making his mother beneficiary was in fraud of the rights of the wife. The court on rehearing held, "the insurance policies being community property, Leon Aaron, the husband, could dispose of his ½ interest in the present or future value to his mother and his act of fraud, as found by the jury, in changing the Beneficiary from appellee [his wife] to his mother, could only relate to the ½ interest of appellee in their future value at Leon's death." [18] We are in full accord with this view.[19]

Appellant is entitled to recover against the fund deposited in the registry below. The judgment below is affirmed as to costs and attorneys fees, and reversed to provide for payment out of the registry of the sums remaining to Charlene Davis extinguishing the liability of all parties for the proceeds of this policy.

14. Watson v. Harris, 61 Tex.Civ.App. 263, 130 S.W. 237 (1910) [Gift to mistress].

15. See Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962).

16. See Brown v. Brown, 282 S.W.2d 90 (Tex.Civ.App.1955, error ref'd n.r.e.)

17. Fed.R.Civ.P. 54(c).

18. Aaron v. Aaron, 173 S.W.2d 310, 315 (Tex.Civ.App.1943, error ref'd w.o.m.)

19. See Allen v. Brewster, 172 S.W.2d 192 (Tex.Civ.App.1943, rev'd on other grounds, 142 Tex. 127, 176 S.W.2d 311 (1944); Coss v. Coss, 207 S.W. 127 (Tex.Civ. App.1918); Kemp v. Metropolitan Life Ins. Co., 205 F.2d 857 (5th Cir. 1953).