**Mary Diane POPE, Plaintiff,**

v.

**Julie C. CAUFFMAN, Briana D. Pope, United of Omaha Life Insurance Co., Defendants.**

**No. 94–4075–SAC.**

United States District Court, D. Kansas.

March 23, 1995.

---

Jay C. Hinkel, Eric W. Severson, Irwin, Clutter & Severson, Topeka, KS, for Mary Diane Pope.

William F. Ebert, Hein, Ebert & Weir, Chtd., Topeka, KS, for Julie C. Cauffman and Briana D. Pope.

Robert W. McKinley, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for United of Omaha Life Ins. Company and Northwestern Mut. Life Ins. Co.

## MEMORANDUM AND ORDER

CROW, District Judge.

In this case, the parties vie for the proceeds of life insurance policies issued by United of Omaha Life Insurance Company and Northwestern Mutual Life Insurance Company insuring Kermit L. Pope, who is now deceased, and the proceeds of an IRA issued by Northwestern Mutual Life Insurance Company. The plaintiff, Mary Diane Pope, is the widow of Kermit Pope. Kermit and Mary Pope were married on July 3, 1976. During their seventeen year marriage, one child, named Cassandra L. Pope, was born. The defendants, Julie C. Cauffman and Briana D. Pope, who are both adults, are the children of Kermit L. Pope by a prior marriage.

During his marriage to Mary Pope, Kermit obtained several life insurance policies. United of Omaha issued one life insurance policy. Mary Pope was designated as the primary beneficiary of the insurance policy; Cassandra L. Pope was named the secondary beneficiary. Northwestern issued four life insurance policies. On each of those life insurance policies, Mary Pope was designated as the primary beneficiary. Cassandra Pope, Julie Cauffman and Brian Pope were named as secondary beneficiaries. Northwestern Mutual Life Insurance Company also issued an IRA annuity in the name of Kermit L. Pope. At the time of the IRA's issuance, Mary Pope was the named beneficiary.

On January 19, 1994, Mary Pope filed a petition for divorce in the District Court of Shawnee County, Kansas. Pursuant to local court rule, the standard divorce temporary restraining order was entered. In pertinent part it states:

3. Each party is restrained from selling, encumbering or disposing of the parties' property, including withdrawing funds from checking or savings accounts, cashing certificates of deposit except for usual living expenses and payment of already existing installment indebtedness, except on approval of the court.

Kermit Pope was served with a copy of this Temporary Restraining Order on that same day. On January 25, 1994, Kermit Pope entered his appearance in that case through his attorney, William F. Ebert.

On March 2, 1994, Kermit Pope signed documents changing the primary beneficiary of his United of Omaha life insurance policy from Mary Pope to Julie Cauffman and Briana Pope. On that same day, Kermit Pope signed a "Designation of Beneficiaries by Owner" form, for the purpose of changing the primary beneficiary of his four Northwestern Mutual Life Insurance Company life insurance policies and one IRA annuity from Mary Pope to Julie Cauffman and Briana Pope.

On March 4, 1994, Kermit L. Pope committed suicide. At the time of Kermit Pope's death, the temporary restraining order was still in full force and effect. At the time of Kermit Pope's death, the policy issued by United Omaha Life Insurance Company paid benefits in the amount of $263,000.[1] The policies issued by Northwestern Mutual Life Insurance Company paid net death benefits in the amount of $198,277.88,[2] representing the amount of benefits to be paid under the policy less offsets for certain loans and unpaid premiums.

Kermit Pope was the record owner of the insurance policies and IRA annuity at the time the divorce action was filed. The insurance policies and IRA annuity were acquired during Kermit's marriage to Mary Pope. All insurance premiums were paid from the assets of the couple during their 17 year marriage.

This case comes before the court upon the plaintiff's motion to dismiss counterclaim (Dk. 13)[3] and upon her motion for summary judgment (Dk. 16). The plaintiff's motion to dismiss was filed to either dispose of the defendants' counterclaim, or in the alternative, to better define the scope of discovery in this case. Discovery is not complete. The defendants oppose the plaintiff's motions, arguing that the plaintiff is not entitled to judgment as a matter of law. The defendants also contend that additional discovery is necessary to demonstrate the relative equities of the parties' claims.

The plaintiff's position in this case is easy to summarize: Based upon the factual similarity of *Willoughby v. Willoughby*, 758 F.Supp. 646 (D.Kan.), *aff'd*, No. 90–3041/No. 90–3053 (10th Cir.1990),[4] the plaintiff claims that she is entitled to summary judgment on her claims and to dismissal of the defendants' counterclaim which seeks the proceeds of the life insurance policies. Essentially, the plaintiff contends that because Kermit Pope changed the designation of the beneficiaries

1. On August 15, 1994, the court entered an order permitting United of Omaha Life Insurance Co. to deposit in the registry of the court the sum of $263,000.00. That sum represents the proceeds of the life insurance policies issued on the life of Kermit Pope by United of Omaha Life Insurance Co. The clerk of the court was directed to invest those funds in a treasury bill at the prevailing interest until disposition of the funds is ordered by the court. *See* (Dk. 10).

2. On October 14, 1994, the court entered an order granting Northwestern Mutual Life Insurance Company leave to deposit $206,922.72 into the court registry. That sum represents the net death proceeds under the policies issued on the life of Kermit Pope by Northern Mutual Life Insurance Company. The clerk of the court was directed to invest those funds into a short term treasury bill at the prevailing interest until dispo-

sition of the funds is ordered by the court. *See* (Dk. 26).

3. On February 9, 1995, this court entered an order denying without prejudice the plaintiff's motion to dismiss counterclaim. The court *sua sponte* reconsiders the plaintiff's motion to dismiss counterclaim on the merits. This procedure simply enables the court to dispose of the pending motions in one, single consolidated order.

4. The unpublished, two-page opinion does not appear on either Westlaw or Lexis. In pertinent part, the order states: "After careful examination of appellant's arguments contained in his brief, we affirm for substantially the same reasons set forth in the district court's Memorandum and Order of January 26, 1990."

of his life insurance policies in violation of the temporary restraining order, his change should be considered void. Therefore, the plaintiff is entitled to the entirety of the life insurance and IRA proceeds. The defendants respond, arguing that *Willoughby* is factually distinguishable from the case at bar. Moreover, the defendants contend that in determining the respective rights of the parties, equitable considerations should enter the calculus of the division of the life insurance proceeds. In support of their position, the defendants cite cases from several jurisdictions addressing this issue.

## Analysis

■ In this action Kansas law apparently controls. The dispute in this case largely turns on the issue of whether Judge Saffels' opinion in *Willoughby* is dispositive of this case. As the plaintiff notes, the facts of *Willoughby* are remarkably similar to the case at bar. In *Willoughby,* Edna and Martin Willoughby were married for seventeen years, during which time two children were born. During the marriage, Martin acquired a life insurance policy. Martin named Edna as the beneficiary. On June 17, 1988, Edna filed a petition for divorce in the District Court of Shawnee County, Kansas. On that same day a restraining order was entered which prohibited the parties from withdrawing, selling, encumbering or disposing of the money, property or assets of the parties not needed for day-to-day living expenses. Martin was served with the petition and restraining order.

On July 6, 1988, Martin changed the named beneficiary on the life insurance policy from Edna to their son, Terry. Martin subsequently added his father, Felton Willoughby, as a secondary beneficiary on the policy. On July 23, 1988, Terry was shot and killed, predeceasing Martin. On July 24, 1988, Martin committed suicide. A battle between Edna and Felton for the proceeds of the life insurance policy ensued in federal court.

Judge Saffels first determined that although the life insurance policy was not specifically mentioned in the restraining order, the policy was "property" within the broad terms of the restraining order. Judge Saf-

fels also concluded that under Kansas law, Edna had a vested, if undetermined, interest in all marital property, including the life insurance policy, at the time she commenced her divorce action. Therefore, the court concluded that Martin's act of changing the named beneficiary violated the terms of the restraining order entered by the Shawnee County District Court.

Judge Saffels also found that the "equities weigh strongly in favor of Edna's interest in the life insurance proceeds." 758 F.Supp. at 650. The court went on to hold:

Under the facts of the present case, the court finds that equity weighs in favor of Edna Willoughby's right to recover the proceeds of the insurance policy vis-a-vis the currently named beneficiary, Felton Willoughby, in view of the Edna and Martin's 17-year marriage, Martin's attempt to change beneficiaries in spite of the restraining order prohibiting him from disposing of property, the fact that the policy was purchased during the marriage and at least some of the premiums were paid from Martin's wages earned during the marriage, and the fact that Felton Willoughby is merely a donee beneficiary with no offsetting equities.

*Id.* Judge Saffels' opinion was affirmed by an unpublished opinion of the Tenth Circuit.

Although the plaintiff correctly notes the factual similarity of *Willoughby,* this court is not convinced that the same result is necessarily compelled in this case. Obviously, this court is bound to follow controlling Tenth Circuit precedent. However, the Tenth Circuit's opinion in *Willoughby* is unpublished and therefore not binding precedent on this court. *See In re Citation of Unpublished Opinions/Orders and Judgments,* 151 F.R.D. 470 (10th Cir.1993). More importantly, the precise basis of the Tenth Circuit's affirmance of Judge Saffels' opinion is not clear. Judge Saffels' opinion not only finds that Martin violated the restraining order by changing the beneficiary, but also expressly makes an evaluation of the relative equities of the party's respective claims to the life insurance proceeds.

In short, the court is not convinced that Judge Saffels' opinion in *Willoughby* stands for the proposition that a change to the beneficiary designation of a life insurance policy by a person subject to a restraining order in a divorce proceeding is automatically void. Even if *Willoughby* does stand for that proposition, in the absence of controlling authority this court is not bound by that decision. The court also notes that discovery was apparently complete in *Willoughby* at the time summary judgment was granted.

For obvious reasons, the issue presented by the case at bar does not arise very often. Aside from *Willoughby*, no case applying Kansas law specifically addresses the issues presented by the case at bar. In its independent research of this issue the court has located a number of cases from other jurisdictions considering the issue presented by this case. *See* David P. Chapus, Annotation, *Divorce and Separation: Effect of Court Order Prohibiting Sale or Transfer of Property on Party's Right to Change Beneficiary of Insurance Policy,* 68 A.L.R. 4th 929 (1989) (collecting cases discussing issue).

The fundamental issue presented by the plaintiff's motion can be decocted to the following issue: Is the expectancy value of a life insurance policy a marital asset? At one end of the continuum, some courts hold that the expectancy value of a life insurance policy is not property and hence not a marital asset. At the other end of the continuum, some courts hold that the expectancy value of a life insurance policy is property of the marital estate. Between these two points lies the middle ground, the recipient of the life insurance proceeds to be determined from an analysis of the precise language of the restraining order, the relevant state statutes and consideration of the balance of the equities.

It appears that a narrow majority of cases hold that the expectancy value of a life insurance policy is not a marital asset, and therefore a temporary restraining order generally barring the sale or dissipation of the couple's assets does not prevent the insured from changing the named beneficiary. *See Bell v. Bell,* 896 S.W.2d 559 (Tenn.Ct.App.1994) (collecting cases); *see, e.g., Gleed v. Noon,* 415

Mass. 498, 614 N.E.2d 676 (1993) ("A change of beneficiary on a policy of a plan is not a conveyance, transfer or disposal of the proceeds because they are not acquired until the death or retirement of the insured.") (citations omitted); *Oswald v. Olds,* 342 Pa.Super. 495, 493 A.2d 699 (1985) ("[T]he proceeds of a life insurance policy on a spouse cannot, by its nature, be property acquired during the marriage since it comes into being upon death and cannot, therefore, be marital property subject to equitable distribution.").

Some of these cases hold, however, that a district court nevertheless has the power to enter a temporary restraining order precluding the parties from changing designation of beneficiaries on life insurance policies, but have only found the change in beneficiary invalid if the temporary restraining order contains language *specifically* prohibiting a change of beneficiary. In *Gleed*, the court stated:

> The plaintiff argues that the decedent violated the temporary restraining order when he changed the beneficiaries on his life insurance policy, pension plan, and IRA from the plaintiff to the defendant. For the decedent to be found in violation of the temporary restraining order, there must be a "clear and unequivocal command and an equally clear and undoubted disobedience." *Nickerson v. Dowd,* 342 Mass. 462, 464, 174 N.E.2d 346 (1961). In this case the order did not specifically prohibit, restrain, or prevent the decedent from changing the beneficiary on any of his policies or accounts and the decedent could not have been guilty of contempt for doing so if he had survived. Absent a specific court order preventing or prohibiting the beneficiary change, the decedent had the right to change the beneficiary designation on the pension plan, IRA, and life insurance policy while retaining ownership in compliance with the injunction.

614 N.E.2d at 678 (citations and footnote omitted). *See Candler v. Donaldson,* 272 F.2d 374, 376–377 (6th Cir.1959) (order expressly provided that insured continue in force and continue to make timely payments of premiums on all life insurance policies; "We see no reason for requiring the insured

to continue to make the necessary premium payments except to keep the policy in effect for the benefit of the wife and child, the named beneficiaries therein, until a final adjudication of property rights was made."); *Oswald,* 493 A.2d at 701.

In contrast, a minority of courts have held that the expectancy value of a life insurance policy is a marital asset. At least one court appears to have held that because the expectancy value of the policy is a marital asset, an insured's change of beneficiary constitutes a violation of a restraining order precluding the parties from selling, transferring, or otherwise disposing of marital assets, and that such a violation may serve as an automatic basis to void the insured's change of beneficiary. *See, e.g., Vitas v. Hancock Mut. Ins. Co.,* C.A. No. 4030, 1987 WL 6170 (Ct.App. Ohio Feb. 4, 1987) (available on Lexis).

In contrast, a number of courts that hold that the expectancy value of a life insurance policy is a marital asset also hold that the insured's change of beneficiary in violation of the temporary restraining order does not, in-and-of-itself, automatically void the change of designation. *See American Family Life Ins. Co. v. Noruk,* 528 N.W.2d 921 (Minn.Ct.App. 1995) (insured's change in beneficiary designation, executed in violation of *express terms* of court's temporary order, is not void and ineffective as a matter of law; equitable principles, rather than a *per se* rule, govern);[5] *Balfany v. Balfany,* 239 Neb. 391, 476 N.W.2d 681 (1991) (violation of a restraining order, standing alone, is insufficient for imposition of a constructive trust on property which is subject to the restraining order); *Wilharms v. Wilharms,* 93 Wis.2d 671, 287 N.W.2d 779 (1980) (although insured's change of beneficiary designation disposed of wife's interest in the policy and therefore violated the temporary restraining order, that act was not sufficiently unconscionable or wrongful to warrant the imposition of a constructive trust on the proceeds of the life

insurance policies). Instead of a "bright-line rule," *i.e.,* a rule that automatically voids the insured's attempted change of beneficiary for violating the temporary restraining order, these courts apparently consider as a relevant factor "the decedent's wrongful act in determining the relative equities of the proceed claimants." *Noruk,* 528 N.W.2d at 924. "Other factors, such as the wrongfulness of third parties' conduct, distribution of marital estate after the insured's death, marital debts for which the surviving spouse remained liable, and likelihood spousal maintenance would have been awarded to the surviving spouse, should also be considered." *Id.*

■ In short, the court does not believe that Kansas has or would adopt a rule that an insured's act of changing a beneficiary while subject to a temporary restraining order restraining the parties to a divorce action from selling, encumbering or disposing of the parties' property, *automatically* results in the voidance of the insured's change in the designation of the beneficiary. As this argument was the primary basis for both the plaintiff's motion to dismiss counterclaim and motion for summary judgment, both motions are denied.

### Plaintiff's Claim to IRA[6]

The plaintiff advances an alternative argument with regard to the IRA annuity issued by NorthWestern Mutual Life Insurance Company. The plaintiff contends that under Kansas law, *citing McCarty v. State Bank of Fredonia,* 14 Kan.App.2d 552, 795 P.2d 940 (1990), "an IRA account is a revocable inter vivos trust and as such is subject to the provisions of K.S.A. 59–602(2) [the spousal election statute]. The court further found that the attempt to change the beneficiary of the account without the spouse's consent was void." Plaintiff's brief, (Dk. 16) at 7–8. The defendants do not respond to this argument.

---

**5.** In *Noruk,* the court of appeals affirmed the district court's decision to follow the decedent's wishes that the life insurance proceeds be given to his sister, rather than his wife.

**6.** The plaintiff's complaint indicated that all of the "policies" issued by Northwestern Life Insur-

ance Company were life insurance policies. The plaintiff's motion for summary judgment clarifies that one of the "policies" with Northwestern Mutual Life Insurance Company was in fact an IRA.

Generally, when a party fails to respond to an argument, the court will grant the motion as uncontested. As to this issue, however, the court is uncertain whether it has sufficient facts to rule correctly in the disposition of the funds. Moreover, since *McCarty* was decided, K.S.A. 59–602 has been amended by the legislature on two occasions. *See* 1992 Kan.Sess. Laws ch. 79, § 1; 1994 Kan.Sess.Laws ch. 132, § 19. In addition, the Supreme Court of Kansas has expressly disapproved a portion of the court of appeals decision in *McCarty. See Taliaferro v. Taliaferro,* 252 Kan. 192, 199–200, 843 P.2d 240 (1992). In light of the parties' spartan treatment of this issue, and out of an abundance of caution, the court denies without prejudice the plaintiff's motion for summary judgment on this particular claim.

## Settlement

In every case, the court encourages the parties to voluntarily resolve their respective claims on mutually acceptable terms. Having reviewed the court file, the briefs of counsel, and the applicable law, the court believes that settlement is a particularly appropriate option which the parties should explore in this case. After the issuance of this order, the court will conduct a telephone conference to confer with counsel regarding the setting of a settlement conference.

IT IS THEREFORE ORDERED that the court *sua sponte* reconsiders the plaintiff's motion to dismiss counterclaim (Dk. 13) on the merits. The court denies the plaintiff's motion to dismiss counterclaim (Dk. 13) on the merits.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Dk. 16) is denied.