174 F.3d 977
 99 Cal. Daily Op. Serv. 2511, 1999 Daily
Journal D.A.R. 3292
MINNESOTA MUTUAL LIFE INSURANCE COMPANY,
Plaintiff-Counter-Defendant-Appellee,
v.
Donald Joe ENSLEY, Defendant-Counter-Claimant-Cross-Claimant-Appellant,
v.
Laura L. Ensley, Defendant-Cross-Defendant-Appellee,
and
Kevin Burke; Burke Group, Counter-Defendants-Appellees.
 No. 97-55560.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1998.
Decided April 6, 1999.
 
 Brad J. Husen, Corona, California, for defendant-counter-claimant-cross-claimant-appellant.
 Gary J. Goodstein, Bannan, Green, Smith, Frank & Rimac, Los Angeles, California, for plaintiff-counter-defendant-appellee.
 Frederick J. Seymour, Augustine & Seymour, Alhambra, California, for defendant-cross-defendant-appellee.
 Christina Bull Arndt, James E. Fitzgerald, Luce, Forward, Hamilton & Scripps, Los Angeles, California, for counter-defendants-appellees.
 On Appeal from the United States District Court for the Central District of California; William D. Keller, District Judge, Presiding. D.C. No. CV-96-01391-WDK-SHx.
 Before: BEEZER, HALL and TASHIMA, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Donald Ensley appeals judgment in interpleader and summary judgment in favor of Minnesota Mutual Life Insurance Company, Kevin Burke, The Burke Group and Laura Ensley. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1391. We affirm in part, vacate in part and remand for further proceedings.
 
 
 2
 * In 1987, Minnesota Mutual Life Insurance Company ("Minnesota Mutual"), through its agent Kevin Burke, issued a policy insuring the life of appellant's brother, James W. Ensley, now deceased. When the policy issued, James and his wife, Laura Ensley, resided in California. The premiums on the policy were paid by checks drawn on an account of Eastside Electrical Supply Company ("Eastside Electrical"), the family business of James and Laura.
 
 
 3
 Originally, James was the owner of the policy and Laura the beneficiary. A document was executed changing ownership of the policy to Laura's name. According to Laura and Burke, James and Laura executed the document in 1987 for estate planning purposes, but did not submit it to Minnesota Mutual until 1993. Donald insists that Laura forged James' name to this document. At her deposition, Laura admitted that she might have forged James' signature to the document.
 
 
 4
 In 1993, James was sentenced to prison. Eastside Electrical ceased operations and the family residence was subject to foreclosure. Laura moved to Arizona. She became unable to pay the life insurance premiums, and she borrowed money against the policy to allow the policy to remain in effect. In May of 1994, Laura petitioned the Arizona court for a dissolution of marriage. The Arizona court issued a preliminary injunction enjoining either party from "[t]ransferring, encumbering, concealing, selling or otherwise disposing of any of the joint, common or community property" belonging to the parties.
 
 
 5
 In 1995, Laura again became unable to pay the premiums. She and Burke agreed that he would pay the premiums in exchange for a 50% ownership interest in the policy. A few months later, Burke assigned the policy back to Laura.
 
 
 6
 After his release from prison, James began investigating the status of the policy. Laura informed James that the policy had lapsed. His independent inquiry revealed that the policy remained in existence. As a result of this investigation, Minnesota Mutual changed the ownership of the policy back to James. He then designated his brother, Donald, as the sole beneficiary of the insurance policy.
 
 
 7
 James died of cancer on January 11, 1996. Although James and Laura submitted a Stipulated Decree of Dissolution to the Arizona Court prior to James' death, the Arizona court did not enter the Decree of Final Dissolution until January 16, 1996. James and Laura were therefore legally married on James' date of death. Neither the Stipulated Decree nor the Decree of Final Dissolution expressly disposed of the life insurance policy.
 
 
 8
 Donald submitted a Beneficiary Claim Form to Minnesota Mutual on January 22, 1996. On February 28, 1996, Minnesota Mutual filed a complaint in interpleader naming Laura and Donald as defendants. Minnesota Mutual deposited $279,927.82 into the registry of the court as the full policy proceeds. Laura subsequently answered the complaint and submitted her own claim for the proceeds of the insurance policy.
 
 
 9
 Donald answered the complaint and filed a counter-claim against Minnesota Mutual, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and fraud. Donald also brought third party claims against Laura, Kevin Burke and the Burke Group.
 
 
 10
 Kevin Burke and the Burke Group (collectively, "the Burke defendants") moved for summary judgment on November 18, 1996. The next day, Minnesota Mutual moved for summary judgment on Donald's counter-claims and for judgment in interpleader. Laura joined Minnesota Mutual's motion for summary judgment.
 
 
 11
 On January 27, 1997, the court granted the motion for judgment in interpleader and granted Minnesota Mutual's, Laura's and the Burke defendants' motions for summary judgment on Donald's counter-claim/third party complaint. The court directed Laura to move for summary judgment on the issue of her entitlement to the insurance proceeds. On April 9, 1997, the court granted Laura's motion for summary judgment and awarded her 100% of the insurance proceeds. This timely appeal followed.
 
 II
 
 12
 The court did not err in granting Minnesota Mutual's motion for judgment in interpleader. The federal interpleader statute provides in relevant part:
 
 
 13
 The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm or corporation ... having issued a ... policy of insurance or other instrument of value or amount of $500 or more ... if (1) Two or more adverse claimants of diverse citizenship ... are claiming or may claim to be entitled to ... any one or more of the benefits arising by virtue of any ... policy ...; and if (2) the plaintiff has deposited ... the amount due under such obligation into the registry of the court ...
 
 
 14
 28 U.S.C. § 1335(a).
 
 
 15
 Donald contends that the interpleader statute was not satisfied because he was the only person to file a claim to the proceeds of the insurance policy. This argument is without merit. Section 1335 allows a stakeholder to file an interpleader action to protect itself against the problems posed by multiple claimants to a single fund. See 28 U.S.C. § 1335; State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). The statute authorizes district courts to hear cases of two or more claimants of diverse citizenship who "are claiming or may claim to be entitled" to the money or property. 28 U.S.C. § 1335(a) (emphasis added). The court's jurisdiction under the interpleader statute extends to potential, as well as actual, claims. See id.; see also Dakota Livestock Co. v. Keim, 552 F.2d 1302, 1308 (8th Cir.1977).
 
 
 16
 Minnesota Mutual satisfied the requirements of the interpleader statute. It faced potential liability to Donald, a California citizen, and Laura, a citizen of Arizona. Upon depositing the amount of the insurance proceeds with the court, Minnesota Mutual was properly discharged from the dispute.
 
 III
 
 17
 We review de novo the district court's entry of summary judgment in favor of Minnesota Mutual and the Burke defendants. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998). We determine, viewing the evidence in a light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See id. at 852.
 
 
 18
 * Minnesota Mutual and the Burke defendants are entitled to summary judgment on Donald's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Donald contends that Minnesota Mutual breached the insurance contract and the implied covenant by failing to pay him the policy benefits. In light of Minnesota Mutual's good faith belief that it faced the possibility of multiple claims, it did not act unreasonably in failing to pay Donald's claim. See Egan v. Mutual of Omaha, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 145 (Cal.1979); see also Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 271 Cal.Rptr. 246, 255 (Cal.Ct.App.1990). Minnesota Mutual satisfied its obligation under the contract by instituting the interpleader action.
 
 
 19
 Donald's claims against the Burke defendants for breach of the insurance contract and the implied covenant of good faith and fair dealing also fail. Under California law, an insurance agent cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing because he is not a party to the insurance contract. See Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1038-39 (Cal.1973); Henry v. Associated Indemnity Corp., 217 Cal.App.3d 1405, 1416-17, 266 Cal.Rptr. 578 (1990). The Burke defendants were acting as the agents of Minnesota Mutual; they were not a party to the insurance contract. The Burke defendants cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing as a matter of law.
 
 B
 
 20
 Minnesota Mutual and the Burke defendants are entitled to summary judgment on Donald's claims of negligence. To prevail on a claim for negligence, a plaintiff must prove that the defendant owed and breached a legal duty to the plaintiff and that the breach was a proximate cause of damages sustained by the plaintiff. See Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 25 Cal.Rptr.2d 137, 863 P.2d 207, 211 (Cal.1993).
 
 
 21
 Contrary to Donald's allegation, Minnesota Mutual discharged any duty it owed to disburse the proceeds of the policy by filing the interpleader action and depositing the policy proceeds into the registry of the court.
 
 
 22
 Donald cannot sustain a negligence cause of action against the Burke defendants. Donald contends that the Burke defendants were negligent by changing the ownership of the policy to Laura and then naming Kevin Burke as a part owner. Donald's negligence claim fails for lack of causation. Minnesota Mutual's denial of his claim did not result from the fact that Laura and Burke, at some time, owned the policy together. Minnesota Mutual denied the claim in light of the possibility that Laura held an interest in the life insurance policy on account of her marital status.C
 
 
 23
 The court properly granted summary judgment in favor of Minnesota Mutual and the Burke defendants on Donald's fraud claims. To prevail on a claim for fraud, a plaintiff must show: (1) misrepresentations; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. See Engalla v. Permanente Medical Group, 15 Cal.4th 951, 64 Cal.Rptr.2d 843, 938 P.2d 903, 917 (Cal.1997).
 
 
 24
 Minnesota Mutual is entitled to summary judgment on Donald's claim for fraud because Donald has not alleged that Minnesota Mutual made false representations to him. Donald testified at his deposition that he never had any contact with anyone at Minnesota Mutual. Moreover, Minnesota Mutual lacked an intent to defraud, a necessary element of a fraud cause of action, in instituting the interpleader action. Minnesota Mutual is entitled to judgment as a matter of law on the basis of the court's conclusion that Minnesota Mutual had a good faith basis for filing its complaint in interpleader.
 
 
 25
 Donald cannot sustain a claim for fraud against the Burke defendants. Donald alleged that the Burke defendants engaged in fraud by changing the ownership of the policy without James' permission, advising James that he was not the owner of the policy and misrepresenting that the policy had lapsed. Donald does not allege that the Burke defendants made any misrepresentations to Donald, but rather he alleges that they made misrepresentations to James. Even if Donald could show that the Burke defendants made misrepresentations to Donald, he cannot prove his own reliance or damages. At his deposition, Donald admitted that he did not act or refrain from acting in reliance on their statements. In fact, Donald testified that the Burke defendants' statements about the policy led him to begin an investigation into the status of the policy.
 
 
 26
 Even if Donald could establish reliance, his claim fails for lack of causation. Donald claims that he suffered damage by losing the proceeds of the policy. However, the court awarded the proceeds to Laura based on her community property interest in the policy, and not on the basis of any misrepresentations to Donald.
 
 
 27
 We affirm summary judgment in favor of Minnesota Mutual and the Burke defendants.
 
 IV
 
 28
 Donald contends that summary judgment awarding all the insurance proceeds to Laura was improper. We review the entry of summary judgment de novo. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998).
 
 
 29
 * The record is insufficient to allow us to resolve Donald's assertion that the insurance policy was James' separate property because the premium for the final term of the policy was paid with James' separate funds. Donald's argument is premised on the assumption that the insurance policy provided term, as opposed to whole life, coverage.[1] To support his characterization of the policy as a term insurance policy, Donald offers the first page of the 1987 reissue of the policy which describes the type of coverage as "Basic Policy Level Premium Term Insurance to Age 56." However, a 1993 reissue recites that it supersedes all prior reissues, identifies the policy as an "Adjustable Life Policy" and describes the coverage as "Basic Policy Guaranteed Level Premium to Age 62." We face a material issue of fact as to whether the policy at issue provided term coverage.
 
 
 30
 * If the insurance policy provided term coverage, characterization of the policy as a community or separate asset will depend on the source of funding of the premium for the final term of the policy. In the context of term life insurance, the community owns the policy during the term for which the policy was acquired with community funds. See Estate of Logan, 191 Cal.App.3d 319, 321, 236 Cal.Rptr. 368 (1987) ("If the insured dies during the term paid with community funds, the proceeds of the policy are community property."); see also 11 Witkin, Summary of California Law, Community Property § 28 (1990). Once the community ceases to pay the premiums and the premium for a new term is paid with post-separation separate property earnings, the policy is characterized as separate property. See Logan, 191 Cal.App.3d at 321, 324, 236 Cal.Rptr. 368 ("The community having received everything it bargained for, there is no longer any community property interest in the policy and no community asset left to divide."). Nothing in the record indicates whether the premium for the final term of the policy was funded with community or separate property.
 
 
 31
 We reject Laura's contention that, even assuming the policy offered term coverage, the policy would be a community asset because James became uninsurable during a term funded by the community. Laura relies on a statement of the California appellate court in Logan, that "[i]f the insured becomes uninsurable during a term paid with community funds, then the right to future insurance coverage which cannot otherwise be purchased is a community asset to be divided upon dissolution." 191 Cal.App.3d 319, 326, 236 Cal.Rptr. 368. Laura's reliance on Logan is unavailing.
 
 
 32
 First, Laura overstates the scope of Logan 's exception. Laura relies on Logan for the proposition that a term life insurance policy is community property where the insured becomes uninsurable[2] during a term funded with community assets. The Logan court actually regarded the "right to future insurance coverage"--not the life insurance policy--as the community asset subject to division upon dissolution. 191 Cal.App.3d at 326, 236 Cal.Rptr. 368; see also id., 191 Cal.App.3d at 321, 236 Cal.Rptr. at 369 ("the right to continued coverage upon payment of future premiums is a valuable community property asset for one who is uninsurable") (emphasis added).
 
 
 33
 Second, the statement from Logan on which Laura relies is dictum. The Logan court declined "to discuss how this [renewal] right might be valued" because it determined that the decedent was insurable when he began paying the premiums with post-separation separate property earnings. Id. (footnote omitted); see also id. 191 Cal.App.3d at 327, 236 Cal.Rptr. 368 (Haning, J., concurring) ("The reference to an exception in the event the insured party becomes uninsurable is not an issue before us, has not been fully briefed and is not ripe for decision in the present circumstances."). We are not bound by dicta of state appellate courts. See In re Pladson, 35 F.3d 462, 466 (9th Cir.1994).
 
 
 34
 Third, another division of the California Court of Appeal has criticized Logan 's description of the renewal right as a community asset. In Marriage of Spengler, 5 Cal.App.4th 288, 6 Cal.Rptr.2d 764 (1992), the court agreed with the analysis in Logan that "as long as the insured spouse remains insurable, term insurance has no divisible community property value upon expiration of the term acquired with community funds/efforts." Spengler, 5 Cal.App.4th at 293, 6 Cal.Rptr.2d 764. The Spengler court disagreed with "dictum" in Logan "finding an exception where the insured spouse becomes uninsurable during the marriage." Id.
 
 
 35
 Finally, Laura fails to account for another aspect of the opinion. In Logan the decedent's former wife argued that she held a community property interest in the proceeds of her former husband's "employment-related term life insurance policy." 191 Cal.App.3d at 321, 236 Cal.Rptr. 368. The right to future coverage under employment-related group term policies "is not inexorably earned by the investment of community funds/efforts in acquiring the policy." Spengler, 5 Cal.App.4th at 297, 6 Cal.Rptr.2d 764. Rather, continued coverage under such a policy "depends on the employee's continuing to work at that employment and on the employer's continuing to provide the group insurance plan." Id.; see also Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1994) p 8:91. Nothing in the record suggests that the insurance policy before us is an employment-related group term policy of the type described in Logan.[3] We decline Laura's invitation to apply Logan 's exception in this case.
 
 
 36
 We vacate and remand this matter to the district court in light of the triable issue of fact regarding the source of payment of the premium for the final term of the insurance policy.
 
 2
 
 37
 If the insurance policy provided whole life coverage, then the policy is properly characterized as a community asset to the extent that it was funded by the community. Under California law,[4] where the premiums of a life insurance policy are paid with community funds, the policy is community property. See Life Ins. Co. of N. Am. v. Cassidy, 35 Cal.3d 599, 200 Cal.Rptr. 28, 676 P.2d 1050, 1053 (Cal.1984); Marriage of O'Connell, 8 Cal.App.4th 565, 577-78, 10 Cal.Rptr.2d 334 (1992).
 
 
 38
 We reject Donald's contention that the policy must be characterized as James' separate property on the bare assertion that "each and every premium was paid by Eastside Electrical Company." Donald offers California incorporation documents and a stock certificate to argue that Eastside Electrical was James' separate property. While James may have held a separate property interest in Eastside Electrical, the fact that Eastside Electrical paid the insurance premiums does not establish that the policy was James' separate property.
 
 
 39
 The record now before us presents an issue of fact as to whether the funds used to pay the premiums during the marriage were separate or community assets. Donald has yet to demonstrate that the funds used by Eastside Electrical to pay the premiums came from James' separate property ownership interest in the company. We are unable to discern from the record before us whether the insurance premiums were paid by Eastside Electrical in connection with James' ownership interest, as a loan to James, as repayment of a loan from James or as an employee benefit.
 
 
 40
 We note that both Laura and James worked at Eastside Electrical and drew salaries during their marriage. It is a basic tenet of community property law that community property includes all property obtained through the exercise of a spouse's labor and skills. See Emard v. Hughes Aircraft Co., 153 F.3d 949, 955 (9th Cir.1998) (citing Weinberg v. Weinberg, 67 Cal.2d 557, 63 Cal.Rptr. 13, 432 P.2d 709, 713 (Cal.1967)), cert. denied, --- U.S. ----, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999). The salaries earned by James and Laura during their marriage were assets of the community. If the checks issued by Eastside Electrical to pay the policy premiums for other than term insurance were drawn from the earnings of either spouse, then that portion of the total insurance policy purchased with community funds should be characterized as a community asset.
 
 
 41
 We remand this matter to the district court for determination whether the checks issued during the marriage in payment of the insurance premiums were drawn from community or separate property.
 
 3
 
 42
 Characterization of the insurance policy as separate or community property will determine the proper allocation of the policy proceeds. If the insurance policy was James' separate property, then James was free to name Donald as beneficiary. Donald would be entitled to 100% of the proceeds. If, on the other hand, the community owned some portion of the policy, then Laura retains an interest in the policy. Although James was free to designate the testamentary disposition of his community property share in the policy, he could not deprive Laura of her community interest by naming Donald as beneficiary of Laura's interest without Laura's consent. See Life Ins. Co. of N. America v. Cassidy, 35 Cal.3d 599, 200 Cal.Rptr. 28, 676 P.2d 1050, 1053 (Cal.1984) (surviving spouse's community interest in an insurance policy may not be defeated by a gift of the policy proceeds to a third party named as beneficiary without the spouse's consent). We remand for the proper allocation of the policy proceeds in light of the foregoing principles.
 
 B
 
 43
 The district court determined that James' attempt to name Donald as the beneficiary of the policy violated the Arizona injunction and therefore was void. The court awarded 100% of the proceeds to Laura as the named beneficiary. We now must decide whether the district court erred in sanctioning Donald for James' actions allegedly in violation of the Arizona injunction.[5]
 
 
 44
 Although sanctions for violating an injunction are generally administered by the court that issued the injunction, see Baker by Thomas v. General Motors Corp., 522 U.S. 222, 118 S.Ct. 657, 665, 139 L.Ed.2d 580 (1998), precedent exists to support the exercise of ancillary jurisdiction over an alleged violation of an injunctive order issued during a state court dissolution proceeding. See Davis v. Prudential Ins. Co., 331 F.2d 346 (5th Cir.1964); Pope v. Cauffman, 885 F.Supp. 1451, 1455 (D.Kan.1995).
 
 
 45
 In Davis, the Prudential Insurance Company filed an interpleader action to resolve conflicting claims to the proceeds of a life insurance policy between the decedent's wife and the decedent's mother. Davis, 331 F.2d at 348. The wife had been the designated beneficiary of the insurance policy until decedent named his mother as beneficiary. Id. The change in beneficiary occurred shortly after the wife commenced dissolution proceedings, during which a temporary restraining order issued "preventing the alienation of all or any portion of the community estate." 331 F.2d at 348. The husband died before the termination of the dissolution proceedings. Id. The Eighth Circuit considered, and rejected, the wife's argument that the change in beneficiary was void because it violated the temporary injunction. Id. at 349.
 
 
 46
 We are persuaded that a district court may exercise jurisdiction to adjudicate an alleged violation of an injunctive order issued in a state court dissolution proceeding. However, this conclusion does not end our inquiry. We must now decide whether the court erred in concluding that James violated the injunction and in awarding the full proceeds to Laura.
 
 
 47
 The district court offered no authority to support the conclusion that James' attempt to designate Donald as the beneficiary violated the Arizona injunction. Our review of the case law yields no controlling law on point. In fact, the question whether the statutory injunction issued in a dissolution proceeding will restrain a spouse from changing the beneficiary designation on a life insurance policy "has yielded varying results in the courts" of other jurisdictions. David P. Chapus, Divorce and Separation: Effect of Court Order Prohibiting Sale or Transfer of Property on Party's Right to Change Beneficiary of Insurance Policy, 68 A.L.R.4th 929 (1989); see also Pope, 885 F.Supp. at 1455 (noting "narrow majority of cases" holding that a temporary restraining order "generally barring the sale or dissipation of the couple's assets does not prevent the insured from changing the named beneficiary.").
 
 
 48
 The Arizona statute from which the injunction arose guides our inquiry. The Arizona statute directs the clerk of the court to issue a preliminary injunction in all dissolution actions enjoining the parties "from transferring, encumbering, concealing, selling, or otherwise disposing of any of the joint, common or community property". Ariz. Rev. St. § 25-315 (1998). The purpose of the Arizona statute is "to forbid actions by either of the parties that would injure or dissipate the property of the marital estate and to forbid actions that would place the property beyond the power of the court thus preventing the court from allocating the property in its final decree." Lonergan v. Strom, 145 Ariz. 195, 700 P.2d 893, 897 (Ariz.Ct.App.1985); accord Sample v. Sample, 152 Ariz. 239, 731 P.2d 604, 608-09 (Ariz.Ct.App.1986).
 
 
 49
 In Lonergan, while the statutory preliminary injunction was in effect, the husband quitclaimed his interest in the family residence to a legal secretary employed by his attorney. 700 P.2d at 895. The secretary then quitclaimed her interest back to the husband. Id. "Husband's sole reason for engaging in the transaction was to sever the joint tenancy relationship between himself and his wife leaving them as owners of the property as tenants in common." Id. The court found that the straw man transaction "technically violated the injunction but it did not remove the property from the marital estate so as to place it beyond the reach of the court." 700 P.2d at 898. The court declined to set aside the transaction.
 
 
 50
 James' attempt to designate Donald as beneficiary did not violate the Arizona injunction because it did not remove the property from the marital estate. If the insurance policy was James' separate asset, then he was free to change the beneficiary designation. If the policy is properly characterized as community property, then James' designation of Donald as beneficiary could not deprive Laura of her community share in the policy as a matter of law.
 
 
 51
 James' designation of Donald as beneficiary is properly viewed as an attempt to direct the disposition of James' interest in the community property upon his death. "The purpose of the statute is not to freeze each party's estate plan as of the date of the institution of the action." Lonergan, 700 P.2d at 898. The Arizona injunction was of a temporary nature, designed to preserve the property of the marital estate and to keep it within the reach of the court. See id. at 897; see also Briece v. Briece, 703 F.2d 1045, 1047 (8th Cir.1983) (rejecting wife's assertion that temporary restraining order in dissolution action invalidated substitution of decedent's parents for wife as life insurance beneficiary because "to so recognize the temporary restraining order would be to give it the effect of a final distribution of marital property").
 
 
 52
 We conclude that James' attempt to designate Donald as beneficiary is not of such a character as to dissipate the property of the marital estate or to interfere with the court's adjudicatory power in the dissolution proceeding.[6] The district court erred in concluding that James violated the injunction.
 
 
 53
 In summary, there are material issues of fact with respect to whether the policy was a term or a whole life policy; if it was a term policy, whether the community assets were the source of the premium payment for the final term; and if it was a whole life policy (or some variation of a whole life policy), whether and to what extent community funds were the source of the premium payments. In light of the material issues of fact in the record presented to us regarding the policy of insurance and its ownership, we vacate judgment in favor of Laura and remand this matter to the district court for proceedings consistent with this opinion.
 
 V
 
 54
 Finally, Donald appeals the court's denial of his motion to reconsider the grant of summary judgment and judgment in interpleader. We review the district court's denial of a motion for reconsideration for an abuse of discretion. See Bellus v. United States, 125 F.3d 821, 822 (9th Cir.1997). We find none here.
 
 
 55
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 
 
 56
 Pursuant to Rule 39(a) of the Federal Rules of Appellate Procedure, we order each party to bear its own costs on appeal.
 
 
 
 [1]
 Whole life insurance pays death benefits and builds cash surrender value. Term life insurance is written for a fixed or specified term and expires at the end of the term without retaining cash value. Term insurance typically contains a right to renewal for future terms without proof of current medical eligibility. See generally, Estate of Logan, 191 Cal.App.3d 319, 324, 236 Cal.Rptr. 368 (1987); Marriage of Spengler, 5 Cal.App.4th 288, 294-95, 6 Cal.Rptr.2d 764 (1992)
 
 
 [2]
 We assume that James became uninsurable during a community-funded term solely for the purpose of evaluating Laura's argument. In fact, Laura has not established that James became uninsurable during a term funded by the community. Although the record establishes that James died of cancer, nothing in the record indicates that he was diagnosed with the illness during a community-funded term of the policy
 
 
 [3]
 If the insurance policy is a private insurance contract, then the right of renewal may be a contractual right, rather than a mere expectancy. See In re Marriage of Elfmont, 9 Cal.4th 1026, 39 Cal.Rptr.2d 590, 891 P.2d 136, 145-46, 146 n. 1 (George, J., concurring). "The necessary implication from Spengler ... is that the renewal right will be a 'property' interest ... when the right to renew is wholly within the spouse's control--i.e., an enforceable contract right." Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1994) p 8:92
 
 
 [4]
 The district court, sitting in California, applied California law. The parties agree that California law governs this dispute. The action began in California, the insurance policy originally issued in California and James died in California. Although the Arizona court may have applied Arizona law to the distribution of property after entry of a final decree of dissolution, see Martin v. Martin, 156 Ariz. 440, 752 P.2d 1026 (Ariz.App.1986) (as modified by 156 Ariz. 452, 752 P.2d 1038), the Arizona action abated upon James' death. See Emmerik v. Colosi, 193 Ariz. 398, 972 P.2d 1034 (Ariz.App. Div. 1, 1998) (citing In re Marriage of Hilke, 4 Cal.4th 215, 14 Cal.Rptr.2d 371, 841 P.2d 891, 894 (Cal.1992))
 
 
 [5]
 Donald argues that Laura should forfeit her interest in the proceeds on the theory that she violated the terms of the injunction by concealing the existence of the policy during the dissolution proceedings and by selling one-half of the policy to Burke. Donald assumes that the court awarded James' interest to Laura as a penalty for violating the injunction. In fact, the district court held that the attempt to designate Donald as beneficiary was void, which left Laura as the named beneficiary. Consequently, a finding that Laura violated the injunction by selling one-half of the policy would not alter the result in this case because Burke assigned the policy back to Laura
 
 
 [6]
 Even if James' attempt to name Donald as the beneficiary violated the letter of the injunction, the Arizona law does not require the invalidation of the beneficiary designation. "Although the court has the power to order a return to the status quo or to treat a transaction invalid where an injunction has been violated, ... exercise of this power is within the discretion of the court." Lonergan, 700 P.2d at 898 (internal quotation omitted) (declining to set aside transfer where technical violation of injunction did not contravene the purpose or intent of the injunction); see also Davis, 331 F.2d at 349-50 ("[I]njunctions may be enforced by contempt proceedings, damage actions, or actions to enforce a penalty included within the injunctive order, but they do not, under the circumstances here, operate to void the transfer they prohibit in a suit by the protected party against the transferee.")