# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAIL MICHELMAN, an individual,
    *Plaintiff-Appellant,*

    v.

LINCOLN NATIONAL LIFE INSURANCE
COMPANY, a foreign insurance
company; JOHN AND JANE DOES, 1-
10 and the marital communities
comprised thereof,
    *Defendants-Appellees.*

No. 11-35393

D.C. No.
2:10-cv-00271-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
June 4, 2012—Seattle, Washington

Filed July 12, 2012

Before: Barry G. Silverman and Mary H. Murguia,
Circuit Judges, and Dolly M. Gee,* District Judge.

Opinion by Judge Gee

---

*The Honorable Dolly M. Gee, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Dan'L Bridges, McGaughey Bridges Dunlap, PLLC, Bellevue, Washington, for the plaintiff-appellant.

Walter E. Barton, Johanna M. Coolbaugh, Medora A. Marisseau (argued), Karr Tuttle Campbell, Seattle, Washington, for the defendants-appellees.

**OPINION**

GEE, District Judge:

We are asked to decide whether an adverse claim to a stake may be so lacking in substance that a neutral stakeholder cannot interplead in good faith. Interpleader is proper when a stakeholder has at least a good faith belief that there are conflicting colorable claims. We conclude that Appellee met this requirement.

## I.   BACKGROUND

Gail and Irwin Michelman submitted a life insurance application to Lincoln National Life Insurance Company in 1999 to obtain coverage for their minor daughter, Elizabeth. At the time, Gail and Irwin were married. The application listed Gail and Irwin as the primary beneficiaries and their other daughter, Jessica, as a contingent beneficiary. The application designated Gail as the policy owner, with policy ownership passing to Elizabeth upon her 21st birthday. Lincoln subsequently issued the policy memorializing this.

Whether Irwin also had an ownership interest in Elizabeth's life insurance policy is less certain. The insurance contract unhelpfully defined the policy "Owner"—in the singular—as "the Owner identified in the application or a successor." Although Irwin's name was written on the line of the application designated for the "Contingent owner," the Michelmans may have intended for Irwin to be a primary rather than a contingent owner. The application form did not provide a space for more than one primary owner. Nonetheless, in the space to be completed "[i]f two or more Primary owners are named," the Michelmans checked the box indicating that they were to be joint owners with a right of survivorship between them.

The Michelmans themselves dispute what their intent was. Irwin testified at his deposition that he and Gail intended for

both of them to be primary owners of the policy, but that his name was listed on the line for "Contingent owner" because there was no space on the form to insert the name of the second primary owner. At Gail's deposition, she expressed her belief that Irwin was only a contingent owner. For its part, Lincoln was inconsistent on the ownership issue. Its records reflected that Gail was the policy's primary owner and Irwin was the contingent owner, but its claims examiner stated in a declaration that the insurance application names Gail and Irwin as joint owners.

Gail and Irwin divorced in 2001. The divorce decree did not include Elizabeth's life insurance policy among the assets that it catalogued. In 2002, when Elizabeth had not yet reached the age of 21, Gail submitted a change-of-beneficiary form to Lincoln purporting to remove Irwin as a beneficiary and leave herself as the sole primary beneficiary and Jessica as the contingent beneficiary. Lincoln acknowledged this change a few days later in a letter to Gail.[1]

Elizabeth died on August 10, 2009 at the age of 22. Although the autopsy revealed no clear cause of death, the medical examiner found that Elizabeth's multiple sclerosis and the high level of oxycodone in her blood were contributing factors. Elizabeth's parents raised concerns about what they considered to be suspicious circumstances surrounding their daughter's death,[2] but the sheriff's department found no evidence that another person was involved. Gail, who was out of state at the time of Elizabeth's death, was never suspected of foul play.

---

[1]The letter indicates that Lincoln sent a copy to Irwin, as the insurance agent who sold the policy, at The Michelman Agency, Inc. Irwin alleged in his cross- and counterclaim that he did not receive proper notice of the change in beneficiary, but never produced evidence to support this allegation.

[2]Elizabeth's two cell phones were missing, as was the key to her trailer. In addition, her bed was uncharacteristically neat.

On August 17, 2009, Irwin called Lincoln and stated that Lincoln should look for fraud in the beneficiary information for Elizabeth's life insurance policy. Irwin told Lincoln that he and his wife were originally equal beneficiaries under the policy and that their divorce decree prohibited any changes.

On September 21, 2009, Irwin's attorney wrote a letter to Lincoln requesting that it not pay any benefits on Elizabeth's policy before certain issues were resolved:

> Please be advised that Elizabeth Ann Michelman has died under suspicious circumstances and that her death is currently being investigated by the police as a possible homicide.

> When questioned upon Elizabeth's death Gail S. Michelman claimed that Elizabeth's life insurance policy with Lincoln Financial Group had lapsed several years ago when in fact it was in full force. Elizabeth's life insurance policy is a community property asset of the Michelman's marriage that was not awarded to either party in their divorce. It has also come to Irwin Michelman['s] attention that Gail Michelman[,] in violation of an agreement that she had with Mr. Michelman[,] changed the beneficiary on Elizabeth's life policy without his knowledge or permission. It also appears that Lincoln Financial Group failed to contact Elizabeth Michelman about naming a new beneficiary upon reaching adulthood.

On September 30, 2009, Irwin submitted a completed claim form to Lincoln requesting the policy proceeds.

Lincoln wrote to Gail and Irwin on October 12, 2009. Lincoln informed them that its records showed Gail to be the beneficiary but acknowledged that Irwin had made a conflicting claim. Admitting that the policy proceeds were due and payable, Lincoln explained that by paying one party it faced

the risk of being sued by the other. The solution, Lincoln concluded, was to file an interpleader action unless Gail and Irwin could agree how to distribute the proceeds. Although Gail and Irwin subsequently exchanged letters regarding settlement proposals, some of which they shared with Lincoln, they failed to reach an accord.

Gail submitted a claim form on October 22, 2009. In the accompanying letter, she stated that Irwin had no valid claim and that an action in interpleader would be "frivolous." Gail asserted that Lincoln bore the responsibility of resolving any dispute between her and Irwin. She asked Lincoln what proof Irwin had offered in support of his claim.

Over the next three months, Gail and Irwin exchanged a series of letters and telephone calls. Gail repeatedly pressed her position that she was the beneficiary, Irwin had no legitimate claim to the insurance proceeds, and Lincoln was obligated to pay her rather than force her to litigate against her ex-husband. Lincoln maintained that the policy proceeds were due and payable, Gail was the current beneficiary according to its records, but it could not pay Gail while Irwin disputed the validity of the 2002 change removing him as a beneficiary. Lincoln reiterated its plan to file an interpleader action unless Gail and Irwin resolved their conflicting claims within 30 days. Other than requesting that Irwin provide proof of his claim, Lincoln never conducted any further investigation into the truth of Irwin's allegations.

On January 15, 2010, Gail filed suit in state court to recover the insurance proceeds, asserting claims against Lincoln for bad faith, violation of Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86, and breach of contract. Lincoln removed the action to federal court on the basis of diversity of citizenship. Seeking to interplead the insurance funds, Lincoln filed a counterclaim against Gail and a third party complaint against Irwin.

Before discovery had commenced, Lincoln moved for summary judgment on all of Gail's claims. In its August 10, 2010 order, the district court denied Gail's request for a continuance and granted Lincoln's summary judgment motion in part. The court found that interpleader was appropriate and dismissed Gail's claim for breach of contract but denied summary judgment as to Gail's bad faith and CPA claims, finding that they were independent of Lincoln's ultimate coverage decision.

After discovery concluded, Gail moved the district court to vacate its August 10 summary judgment order and, when that motion was denied, moved the court to reconsider its denial of the motion to vacate. The district court denied Gail's motion for reconsideration.

Gail and Lincoln each moved for summary judgment on Gail's remaining claims and Irwin's cross- and counterclaims. The district court granted summary judgment in favor of Gail and Lincoln on Irwin's claims and determined that Gail was entitled to all of the proceeds from Elizabeth's life insurance policy. Irwin has not appealed those decisions. On March 2, 2011, the district court granted summary judgment in favor of Lincoln on Gail's extracontractual claims, finding that Lincoln acted in compliance with state insurance regulations. Gail now appeals that order, the August 10, 2010 summary judgment order, and the orders denying her motion to vacate and motion for reconsideration.

## II.   JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction under 28 U.S.C. §§ 1332(a) and 1446. We have jurisdiction under 28 U.S.C. § 1291.

Review of the district court's summary judgment rulings is *de novo*. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing *Fortune Dynamic, Inc. v. Victo-*

*ria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1031 (9th Cir. 2010)). "[W]e must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 996 (9th Cir. 2012) (quoting *Baccei v. United States*, 632 F.3d 1140, 1145 (9th Cir. 2011)) (internal quotation marks omitted).

The denial of a request for a continuance of summary judgment pending further discovery is reviewed for an abuse of discretion. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) (citing *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)). A district court abuses its discretion only if the party requesting a continuance can show that allowing additional discovery would have precluded summary judgment. *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 810 (9th Cir. 2008) (quoting *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999)).

The district court's refusal to reconsider or vacate summary judgment is also reviewed for an abuse of discretion. *See Goodstein v. Cont'l Cas. Co.*, 509 F.3d 1042, 1051 (9th Cir. 2007) (quoting *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1086 (9th Cir. 2005)).

## III. DISCUSSION

### A. Interpleader

Although Gail challenges several aspects of the district court's rulings, her core contention below and on appeal is that Lincoln should incur liability for its decision to interplead. She concedes that Lincoln had no obligation to determine the ultimate truth of Irwin's competing claim but maintains that Irwin's arguments were not cognizable claims against the policy and, even if they were, Lincoln lacked a

sufficient factual basis to evaluate whether Irwin's claims were colorable.

**1.**

**[1]** Federal Rule of Civil Procedure 22 authorizes a stakeholder to join "[p]ersons with claims that may expose [the stakeholder] to double or multiple liability" and requires such persons to interplead. Fed. R. Civ. P. 22(a)(1). Here, the district court stated that "the bald assertion of a claim against the policy, without any colorable support, is probably not enough to warrant an interpleader action." The court did not consider the issue further, however, because it found that Lincoln had a good faith belief that it faced the potential of multiple liabilities. Gail challenges that finding.

Beginning in 1917, the first three federal interpleader statutes required claimants to be "bona fide" for jurisdictional purposes. *See* Act of Feb. 22, 1917, Pub. L. No. 64-346, 39 Stat. 929; Act of Feb. 25, 1925, Pub. L. No. 68-465, 43 Stat. 976; Act of May 8, 1926, Pub. L. No. 69-203, 44 Stat. 416. This requirement was formally dropped from the statute in 1936, *see* Act of Jan. 20, 1936, Pub. L. No. 74-422, 49 Stat. 1096, and was not adopted the following year in Federal Rule of Civil Procedure 22, under which the interpleader here arises. Nonetheless, courts continue to hold interpleading stakeholders to a good faith standard. *See, e.g.*, *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008); *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 251 (3d Cir. 1991).

**[2]** This Circuit has never squarely held that a stakeholder must have a good faith belief about the existence of competing claims in order to initiate an interpleader action. Gail directs us to dictum in *New York Life Insurance Co. v. Lee*, 232 F.2d 811 (9th Cir. 1956). Like the instant case, *Lee* involved an insurance beneficiary's assertion that the insurer had no right to interplead because it was obvious that the pur-

ported adverse claim was sham and frivolous.[3] Relying on out-of-circuit authority, we opined that "[t]here is no doubt . . . that an asserted adverse claim may be so wanting in substance that interpleader under the statute may not be justified." *Id.* at 813 (citing *John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457, 460 (7th Cir. 1954)). The district court did not reach the issue, however, and our decision rested on alternative grounds. *See id.* at 814 ("[W]e find no occasion for inquiring whether the alleged [competing] claim was lacking in sufficient substance to warrant interpleader under the rule applied in [*Beardslee*].").

[3] In other cases, we have implicitly assumed that a good faith standard applies to interpleader actions. For example, in *Palomas Land & Cattle Co. v. Baldwin*, 189 F.2d 936 (9th Cir. 1951), a claimant argued that the stakeholder had interpleaded in bad faith. We did not question that such a claim was cognizable, but noted only that the evidence did not warrant such a finding. *Id.* at 938. More recently, in *Minnesota Mutual Life Insurance Co. v. Ensley*, 174 F.3d 977 (9th Cir.

---

[3]*Lee* differed from this case in that the propriety of interpleader was jurisdictional rather than the basis for substantive liability against the interpleading party. There is no reason why the good faith standard should depend on whether interpleader is commenced under Rule 22, which requires an independent basis for subject matter jurisdiction, or under the interpleader statutes, 28 U.S.C. §§ 1335, 1397, and 2361. The remedy of interpleader "developed in equity and is governed by equitable principles." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033-34 (9th Cir. 2000) (quoting *Lummis v. White*, 629 F.2d 397, 399 (5th Cir. 1980), *rev'd on other grounds by Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)) (internal quotation marks omitted). It is the remedy's equitable origin—rather than any of the minor differences between statutory and Rule-based interpleader—that gives rise to the requirement that parties invoke it in good faith. *See Indianapolis Colts v. Mayor of Balt.*, 741 F.2d 954, 957 (7th Cir. 1984) (citations omitted); *see also Texas v. Florida*, 306 U.S. 398, 410, 59 S.Ct. 563, 83 L.Ed. 817 (1939) ("The equity jurisdiction being founded on avoidance of the risk of loss resulting from the threatened prosecution of multiple claims, the risk must be appraised in the light of the circumstances as they are in good faith alleged and shown to exist at the time when the suit was brought." (citations omitted)).

1999), we held that an insurer's "good faith belief that it faced the possibility of multiple claims" foreclosed a claimant's breach of contract claim because the insurer had "satisfied its obligation under the contract by instituting the interpleader action." *Id.* at 981. This Circuit has also held that courts may impose the costs of suit on a stakeholder who interpleads in bad faith. *See Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) (citing *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976)). All of these decisions presuppose a good faith requirement.

**[4]** Therefore, we agree with the principle articulated in *Lee* and now expressly hold that in order to avail itself of the interpleader remedy, a stakeholder must have a good faith belief that there are or may be colorable competing claims to the stake. This is not an onerous requirement. *See* 4 James Wm. Moore, *Moore's Federal Practice* § 22.03[1][c] (3d ed. 1997) ("In most cases, it is not difficult for the stakeholder to meet the requirement of a reasonable or good faith fear of multiple litigation, and courts appear to require merely that the stakeholder's concern in this regard be more than conjectural.").

The threshold to establish good faith is necessarily low so as not to conflict with interpleader's pragmatic purpose, which is "for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.' " *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (quoting *Ensley*, 174 F.3d at 980). The possibility of double liability is only one such problem; another is the cost of litigation, which does not depend on the merits of adverse claims. *Id.* (citing *Trs. of Dirs. Guild of Am.–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000)); *see also N.Y. Life Ins. Co. v. Welch*, 297 F.2d 787, 790 (D.C. Cir. 1961) ("A stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious.").

**[5]** Although an interpleading stakeholder need not sort out the merits of conflicting claims as a prerequisite to interpleader, good faith requires a real and reasonable fear of exposure to double liability or the vexation of conflicting claims. *See Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.*, 448 F.2d 501, 504 (7th Cir. 1971) ("[S]o long as there exists a real and reasonable fear of exposure to double liability or the vexation of conflicting claims . . . , jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded . . . ." (internal quotation marks omitted)); *accord Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993).

**[6]** A "real and reasonable fear" does not mean that the interpleading party must show that the purported adverse claimant might eventually prevail. *Aaron*, 550 F.3d at 663.

> Of course, the claims of some interpleaded parties will ultimately be determined to be without merit. That, however, is the very purpose of the proceeding and it would make little sense in terms either of protecting the stakeholder or of doing justice expeditiously to dismiss one possible claimant because another possible claimant asserts the claim of the first is without merit.

*Id.* (quoting *Hamilton Steel Prods.*, 448 F.2d at 504) (internal quotation marks omitted) (citing *Beardslee*, 216 F.2d at 460). Rather, the stakeholder is required to demonstrate that the adverse claim has a "minimal threshold level of substantiality." *Id.* (quoting *Indianapolis Colts*, 741 F.2d at 958); *accord Equitable Life Assurance Soc'y of the United States v. Porter-Englehart*, 867 F.2d 79, 84 (1st Cir. 1989) ("[T]o support an interpleader action, the adverse claims need attain only 'a minimal threshold level of substantiality.' " (quoting 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1704 (2d ed. 1986))). The adverse claim—whether actual or potential—must be at least colorable. *See Fonseca v. Regan*,

734 F.2d 944, 948-50 (2d Cir. 1984); *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974); *cf. Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1292 (8th Cir. 1980) (describing interpleader claimants as having "a colorable interest in the fund").

This rule is consistent with our prior decisions. In *Ensley*, there was doubt as to whether the insured's brother or wife was the beneficiary of his life insurance policy. The insured originally owned the policy. The policy named his wife as the beneficiary. A document that the wife may or may not have forged purported to transfer ownership to her. After an investigation, the insured contacted the insurance company, which restored the policy ownership to him. He then designated his brother as the sole beneficiary. The insured and his wife submitted a stipulated decree to dissolve their marriage, but the insured died five days before the state court entered it and thus was legally married at the time of his death. *Ensley*, 174 F.3d at 979-80.

Although the insured's brother was the only person to file a claim to the insurance proceeds, we held that interpleader was proper because the insurer faced potential liability to both the wife and the brother. *Id.* at 981. As we explained, interpleader "extends to potential, as well as actual, claims." *Id.* at 980 (citing 28 U.S.C. § 1335(a); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1308 (8th Cir. 1977)).

*Mack* also illustrates the minimal threshold of substantiality required for interpleader. The owner of a 401(k) plan was in the process of divorcing his wife and had stipulated to a court order naming her as an alternate plan payee. Before the order could be entered, however, the plan owner murdered his wife and shot the state court judge presiding over their divorce. The state court entered an order *nunc pro tunc* transferring the plan payment to the wife as of a date prior to her death. While this decision was being appealed, the plan trustee filed an interpleader action to resolve the competing claims between

the plan owner and the deceased wife's estate. *Mack*, 619 F.3d at 1014-15.

We held that interpleader was proper even though the state court's order had been affirmed by the state supreme court and the state court's judgment was not preempted by federal law as the plan owner had argued. That the district court ultimately disposed of the plan owner's adverse claim to the plan proceeds did not render interpleader improper because the district court could not have made that determination without first addressing the claim's merits. *Id.* at 1023-24. We explained that evaluating a claim's merits before determining that interpleader is appropriate "is backwards of the usual order, and would defeat the resource-conservation purposes of interpleader." *Id.* at 1024 (citing *John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953)).

In contrast, the Seventh Circuit's decision in *Beardslee*, which we cited approvingly in *Lee*, addressed a situation where the facts did *not* justify interpleader. The designated beneficiary of a life insurance policy had changed back and forth several times between the insured's daughter and wife. *Beardslee*, 216 F.2d at 458. While the wife was the designated beneficiary, the insured and his daughter discussed changing the policy again to designate the daughter as the beneficiary, but the insurer falsely told them that the beneficiary could not be changed. *Id.* at 458, 460.

After the insured's death, the daughter sent a letter to the insurer in which she explained the situation and expressed her hope that the insurer would be able to help her cover the insured's medical and burial expenses. She noted that the insurance proceeds would have been just enough to cover those expenses and added that her letter would have been unnecessary if, before her father's death, the insurer had been honest about his ability to change the beneficiary. *Id.* at 460-61.

The Seventh Circuit found that the insurer was unreasonable in filing the interpleader action because the daughter had no actual or potential claim against the policy. The only possible legal claim by the daughter to any money from the insurer would have been a tort action based on the alleged misinformation given to her by the insurer about the possibility of changing the policy. This potential claim was not a basis for interpleader because it did not suggest the daughter's entitlement to the policy proceeds. *Id.* at 461.

**[7]** As these cases illustrate, a stakeholder must interplead in good faith, but the threshold showing is not exacting. Interpleader is appropriate where the stakeholder reasonably fears that there may be multiple parties with colorable adverse claims to the stake. We now consider whether Lincoln met this standard.

## 2.

Irwin submitted a claim form to Lincoln requesting that it pay him the proceeds of Elizabeth's life insurance policy. While this conduct evinces Irwin's claim to the policy proceeds, this does not end the inquiry as to whether Irwin's claim was colorable. At the time Lincoln decided to interplead, its only clues as to Irwin's grounds for entitlement to the policy proceeds were its own records of the policy, Irwin's phone call, and his attorney's subsequent letter in which he asked Lincoln to refrain from paying Gail the proceeds of Elizabeth's life insurance policy until several issues were resolved.

### a.

First, Irwin intimated that Gail may have played a role in Elizabeth's death. The district court felt that the ongoing investigation into Elizabeth's cause of death raised the possibility that the designated beneficiary could be legally barred from recovering.

Washington's slayer statute prohibits recovery of life insurance proceeds by a beneficiary complicit in the insured's death. *See* Wash. Rev. Code § 11.84.100(1). If the slayer statute had precluded Gail from recovering the insurance proceeds, these funds would have been payable to *Jessica*, the contingent beneficiary. Such an eventuality would not have supported a claim by *Irwin*.

**[8]** Furthermore, by the time Lincoln actually filed its counterclaim in interpleader, it had become evident from the final autopsy report that Gail had no involvement in Elizabeth's death. Therefore, Irwin's allegations of "suspicious circumstances" surrounding Elizabeth's death did not support Lincoln's decision to interplead.

### b.

**[9]** Next, Irwin claimed that Gail was questioned about Elizabeth's life insurance policy after Elizabeth's death and Gail falsely stated that the policy had lapsed. Irwin did not explain who questioned Gail or how this alleged misrepresentation, without more, would support his claim against the policy. Much like the innuendo relating to the suspicious circumstances of Elizabeth's death, this assertion appears to be aimed more at undermining Gail's credibility than bolstering Irwin's contractual entitlement to the policy proceeds. This claim, if it can be described as such, did not constitute a colorable claim that would justify interpleader.

### c.

**[10]** In addition, Irwin claimed to have a side agreement with Gail that precluded her from removing him as a beneficiary without his knowledge or permission. Even if this were true, the fact that Gail violated an agreement with Irwin to which Lincoln was not a party would not invalidate the change in beneficiary. *See* Wash. Rev. Code § 48.18.190 ("No agreement in conflict with, modifying, or extending any con-

tract of insurance shall be valid unless in writing and made a part of the policy."). Such a claim supplied no basis for interpleader.

### d.

**[11]** Irwin also asserted in his letter that Lincoln did not contact Elizabeth when she turned 21 about naming a new beneficiary. This fact could not serve as the basis for a claim against the policy because it does not call into question Gail's status as the sole beneficiary. Assuming Lincoln had an obligation to contact Elizabeth about naming a new beneficiary— Irwin provided no hint as to the source of such an obligation —Lincoln's apparent failure to meet it would not support a colorable claim against the policy. As in *Beardslee*, any recovery to which Irwin might be entitled would come from Lincoln individually rather than from Elizabeth's policy. *See* 216 F.2d at 461.

### e.

Lastly, Irwin informed Lincoln that Elizabeth's life insurance policy was a community property asset of his marriage to Gail that was not awarded to either party in their divorce. This was true. *See* Wash. Rev. Code § 48.18.440(1) ("[T]he beneficial interest of a spouse in a policy upon the life of a child of the spouses, however such interest is created, shall be deemed to be a community interest and not a separate interest, unless expressly otherwise provided by the policy."). We have previously upheld the validity of interpleader based on a claimant's "possible community property interest in [insurance] proceeds." *Bayona*, 223 F.3d at 1034 n.3.

Although Elizabeth's insurance policy provided that the owner could change the beneficiary designation,[4] the insur-

---

[4]The policy provided as follows:

ance application—and the policy itself insofar as it incorpo-
rated the application's ownership designation—was
ambiguous whether Gail was the sole owner or whether she
and Irwin jointly owned it. This difference was material. To
the extent Gail and Irwin were joint owners, they became ten-
ants in common of the policy at the time of their divorce
because the dissolution decree failed to provide for the poli-
cy's disposition. *See Yeats v. Yeats' Estate*, 580 P.2d 617, 620
(Wash. 1978). As a tenant in common, Gail could not have
divested Irwin of his one-half beneficial interest in the policy
without his consent. *See generally In re Foreclosure of Liens*,
922 P.2d 73, 77-78 (Wash. 1996) (discussing co-tenant's
rights and circumscriptions).

**[12]** Undoubtedly, Gail possessed affirmative defenses
such as laches or ratification of the change by Irwin or Eliza-
beth, but that is beside the point. Interpleader is designed so
that stakeholders do not have to make legal predictions about
the merits of claims without the benefit of civil discovery.
The ambiguity as to primary ownership of the policy appeared
on the face of the insurance application, which Lincoln
already had in its possession. Given the uncertainty about
Irwin's ownership of the policy, Lincoln had a reasonable fear
that Gail and Irwin would make overlapping claims to the
proceeds.

---

**Change of Beneficiary.** The Owner may change the beneficiary
designation:

a.   while the Insured is alive; and

b.   if the prior designation does not prohibit such a change.

The request to change the Beneficiary designation must be in
writing on a form acceptable to Us. We reserve the right to
require this Policy for endorsement of a change of Beneficiary.
A change of Beneficiary will revoke any prior Beneficiary desig-
nation.

We reject Gail's contention that Lincoln should have investigated further before interpleading. Interpleader proceedings are pragmatic in nature and should be resolved expeditiously. *See Excess & Cas. Reinsurance Ass'n v. Ins. Comm'r*, 656 F.2d 491, 497 (9th Cir. 1981); *see also Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940) ("The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy."). It is this ease and efficiency that makes interpleader a valuable procedural device for insurers to resolve conflicting claims upon the proceeds of an insurance policy. *Cf. Tise*, 234 F.3d at 426. Requiring a stakeholder to investigate further when an adverse claimant has already asserted a colorable claim against the stake would diminish interpleader's purpose of limiting litigation expenses.[5] Because Irwin had a colorable claim to the insurance proceeds, Lincoln need not have expended additional time or resources trying to assess the merits of his claim.

The availability of interpleader need not produce a harsh result for a legitimate claimant who is forced into interpleader due to a rival claimant's non-meritorious assertions. Although judgment in interpleader ordinarily entitles the stakeholder to an award of attorneys' fees from the interpleaded funds for work performed filing the action in interpleader, *see Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962), these fees are normally not high. Moreover, a district court has great discretion in apportioning the stakeholder's fees among the winning and losing claimants, *see id.* at 194-95, providing a mechanism for vexatious claimants to incur the costs of their meritless claims. Gail chose not to seek attorneys' fees from Irwin.[6]

---

[5]This is not to suggest that a stakeholder *never* has a duty to investigate an adverse claim before interpleading. We hold only that, under the facts of this case, Lincoln had sufficient information in its possession to verify the existence of a colorable claim when it decided to interplead.

[6]Although Gail appeals the order granting attorneys' fees to Lincoln, she does not challenge the fee order on independent grounds but seeks its reversal only if the summary judgment orders are reversed.

**3.**

**[13]** We conclude that Lincoln interpleaded in good faith. It knew from Irwin's phone call that Irwin had a potential claim arising from his asserted co-ownership of the policy and Gail's unilateral change to the beneficiary designation. The ambiguity of the insurance application showed that Irwin's assertion was not frivolous. While this alone sufficed to justify interpleader, Irwin took additional steps that further indicated his intent to litigate. He had his attorney send Lincoln a letter requesting that it refrain from paying Gail the policy proceeds. He filed a claim form demanding the policy proceeds. Lincoln thus had a real and reasonable fear of colorable conflicting claims. Consequently, the district court's judgment in interpleader was proper.

## B.    Breach of Contract

**[14]** The district court also did not err in granting Lincoln summary judgment on Gail's claim that Lincoln breached the insurance policy. From the beginning, Lincoln admitted that the policy proceeds were due and payable. It promptly deposited them with the district court. Lincoln's good faith decision to interplead entitled it to summary judgment on Gail's contractual claim. *See Ensley*, 174 F.3d at 981. Because the district court's summary judgment order was proper, the court did not abuse its discretion by denying Gail's subsequent motion to vacate the order and, thereafter, Gail's motion for reconsideration.

Gail also appeals the district court's denial of her motion for a continuance of the summary judgment proceedings. Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).[7] The court may "(1) defer considering

---

[7]Gail moved under former Rule 56(f), which is substantively the same as current Rule 56(d).

the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*

**[15]** Gail requested time to discover information regarding Lincoln's procedures for investigating and resolving disputes over life insurance proceeds between ex-spouses, the steps it took to investigate Irwin's claim, and its underwriting file. Gail did not submit an affidavit or declaration in support of her request. More importantly, as the district court correctly observed, none of Gail's proposed discovery pertained to her breach of contract claim. Therefore, the district court did not abuse its discretion in denying a continuance.

## C.   Bad Faith and Consumer Protection Act Claims

Lastly, Gail challenges the district court's grant of summary judgment in favor of Lincoln on her bad faith and CPA claims. These claims were predicated on alleged violations of state insurance regulations and Washington's Insurance Fair Conduct Act ("IFCA"), Wash. Rev. Code §§ 48.30.010(7), 48.30.015. The district court concluded that, for the most part, Lincoln had not violated the statutory and regulatory provisions at issue. In the two instances where the district court found that Lincoln had failed to comply with the insurance code, it determined that Gail did not suffer any compensable injury as a result.

An insurer's bad faith handling of an insurance claim, like any other tort, is analyzed according to the principles of duty, breach, and proximately caused damages. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 169 P.3d 1, 8 (Wash. 2007) (quoting *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)). The insurer commits bad faith if its actions are unreasonable, frivolous, or unfounded. *Id.* (quoting *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998)).

Washington regulations define specific acts and practices that breach an insurer's duty of good faith. *Am. Mfrs. Mut.*

*Ins. Co. v. Osborn*, 17 P.3d 1229, 1234 (Wash. Ct. App. 2001) (citing Wash. Rev. Code § 48.30.010; Wash. Admin. Code §§ 284-30-300 to -800; *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986)). In addition, a breach of these regulations—in particular any subsection of Washington Administrative Code ("WAC") section 284-30-330—constitutes a *per se* unfair trade practice violation that is independently actionable under the CPA. *See Osborn*, 17 P.3d at 1234.

**1.**

[16] An insurer acts in bad faith by "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims," Wash. Admin. Code § 284-30-330(3), and "[r]efusing to pay claims without conducting a reasonable investigation," *id.* § 284-30-330(4). The district court did not point to any specific policy that Lincoln utilized when investigating claims other than to have its claims adjusters use their common sense.[8] Nonetheless, it decided that any violation of WAC 284-30-330(3) and (4) was harmless because Irwin had asserted a colorable claim and any further investigation would have been irrelevant.

[17] Lincoln did not refuse to pay a claim. It fully acknowledged that it owed Elizabeth's insurance proceeds to somebody. Lincoln merely refused to pay any particular *claimant* until a court determined who was legally entitled to the proceeds. This was fully consistent with state law. *See Farmers Ins. Co. of Wash. v. Romas*, 947 P.2d 754, 759 (Wash. Ct. App. 1997) (concluding that insurer did not act in bad faith by filing interpleader action because "it was not unreasonable for [the insurer] to take the position that a *find-*

---

[8]In fact, the record indicates that Lincoln's policy was to have its claims adjusters verify that a second party intended to submit a competing claim, consult with the legal department, and, if necessary, notify the claimants of Lincoln's intent to file an interpleader action.

*ing* first needed to be made as to who was the 'insured person' under its policy"). Thus, Gail's claim under WAC 284-30-330(4) necessarily fails.

We agree with the district court that, to the extent Lincoln's claims investigation policy was unreasonable, any shortcomings in the policy were harmless. Lincoln's decision to interplead was sound and it had no duty to investigate thereafter. The district court properly granted Lincoln summary judgment on Gail's claim under WAC 284-30-330(3).

**2.**

WAC 284-30-330(1) prohibits an insurer from "[m]isrepresenting pertinent facts or insurance policy provisions." Gail contends that Lincoln violated this subsection when it (1) implied that Irwin's claims were being investigated or adjusted in some way; (2) promised to pay the policy proceeds to the named beneficiary without disclosing an exception for interpleader; and (3) failed to notify Gail that it had a policy of not providing information regarding competing claims.

[18] The district court correctly rejected Gail's first argument because the facts did not support it. As the court observed, Lincoln "clearly and consistently" informed Gail that it would file an interpleader action if she and Irwin were unable to settle their dispute. Lincoln's only reference to an adjustment or investigation process was a December 9, 2009 letter acknowledging receipt of a complaint that Gail had filed with the insurance commissioner and noting that Lincoln's compliance department had "requested additional information for investigation." The district court did not err in concluding that this brief statement did not create a triable issue of fact as to whether Lincoln misrepresented pertinent facts.

Gail's second argument—that Lincoln failed to disclose an interpleader exception to the insurance policy—is also

unavailing. Lincoln had no specific policy regarding interpleader. It referred situations involving multiple claims to its legal department for a determination on a case-by-case basis. And Lincoln had no duty to disclose the possibility of interpleader generally. "[I]t has long been held to be 'the universal law that the statutes and laws governing citizens in a state are presumed to be incorporated in contracts made by such citizens, because the presumption is that the contracting parties know the law.' " *Cornish Coll. of the Arts v. 1000 Va. Ltd. P'ship*, 242 P.3d 1, 12 (Wash. Ct. App. 2010) (quoting *Leiendecker v. Aetna Indem. Co.*, 101 P. 219, 219 (Wash. 1909)) (citing *Fischler v. Nicklin*, 319 P.2d 1098, 1100 (Wash. 1958)), *review denied*, 249 P.3d 1029 (Wash. 2011).

Finally, the district court correctly concluded that Gail had failed to show either a policy of not disclosing information about competing claims or a misrepresentation about such a policy. Gail fails to highlight any facts in the record that would refute this conclusion.

### 3.

An insurer must "acknowledge and act reasonably promptly upon communications with respect to claims," Wash. Admin. Code § 284-30-330(2), and "promptly provide a reasonable explanation of the basis in the insurance policy . . . for denial of a claim," *id.* § 284-30-330(13).

**[19]** The district court correctly held that Lincoln largely complied with subsection (2) by timely responding to most of Gail's communications. This subsection requires only a prompt acknowledgment of and response to communications. It does not require, as Gail maintains, that an insurer respond in a manner that is satisfactory to the policyholder. Gail's reliance on *Truck Insurance Exchange v. Vanport Homes, Inc.*, 58 P.3d 276, 283-84 (Wash. 2002), which involved subsection (13), is misplaced. Gail fails to show any harm resulting from

the two instances where Lincoln did not timely respond to her letters.

The district court also properly rejected Gail's claim under WAC 284-30-330(13). Lincoln admitted payment on the policy was due and was willing to pay whichever party prevailed before the court. It neither denied a claim nor offered a compromise settlement—a prerequisite for a claim under subsection (13).

**4.**

In *Sharbono v. Universal Underwriters Insurance Co.*, 161 P.3d 406, 421-22 (Wash. Ct. App. 2007), the Washington Court of Appeals held that an insurer acted in bad faith as a matter of law by refusing to turn over a claim file to its insured upon request. *Sharbono* explained that such a refusal is unreasonable where an insured party explains its reasons for needing the file and the insurer fails to demonstrate a significant need to protect the file's contents that weighs as heavily as the insured's interests. *Id.* at 422.

Here, the district court found that Lincoln acted reasonably when it declined to furnish Gail with copies of the correspondence and documents it had received from Irwin. Yet, reasonableness is normally a question of fact that the trial court can resolve only "if reasonable minds could reach but one conclusion." *Id.* at 421 (citing *Smith*, 78 P.3d at 1277); *accord West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989) (per curiam).

The facts relied upon by the district court—that Lincoln provided "basic information regarding the nature of Irwin's most compelling claim" (*i.e.*, his challenge to the change in beneficiary) and explained how interpleader works—did not show a significant need to keep the requested information confidential. As did the insurer in *Sharbono*, Lincoln eventually produced the entire claim file during the course of the liti-

gation below "without seeking protection for any document in the file and offered the entire file into evidence." *Sharbono*, 161 P.3d at 422.[9] At a minimum, Lincoln's reasonableness in refusing to turn over the file before litigation was a triable issue of fact.

Nonetheless, Lincoln's failure to turn over the claim file was harmless for the same reason that the district court did not err in denying a summary judgment continuance: with regard to Irwin's claim that he was a co-owner of the policy and that Gail improperly removed his name as a beneficiary without his consent, Gail had all of the information relevant to Lincoln's decision to interplead. Therefore, the district court did not err in granting summary judgment on this issue.

**5.**

WAC 284-30-330(6) imposes liability on insurers for "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Without explanation, the district court held that this subsection applies only to third-party liability policies. The regulation's plain meaning is not so limited. Furthermore, several state courts have considered claims under this subsection in cases involving first-party policies and none has suggested that such a limitation exists. *See, e.g.*, *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 105 P.3d 1012, 1019-20 (Wash. Ct. App. 2005) (travel insurance); *Osborn*, 17 P.3d at 1235 (fire insurance); *Barry v. USAA*, 989 P.2d 1172, 1176-77 (Wash. Ct. App. 1999) (uninsured motorist benefits).

[20] Any legal error, however, was harmless. On this record, it is clear that Lincoln acted in good faith by admitting liability and interpleading the insurance proceeds. The district

---

[9]Lincoln did seek a protective order regarding information pertaining to unrelated cases, which the court granted.

court appropriately granted summary judgment in favor of Lincoln on this claim.

**6.**

The district court granted summary judgment to Lincoln on Gail's claim under WAC 284-30-330(7) because Lincoln never made a settlement offer. This subsection prohibits an insurer from "[c]ompelling a first party claimant to initiate . . . litigation . . . to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered." It does not require a settlement offer. Arguably, by wrongfully denying coverage altogether, an insurer "offers" an insured "substantially less" than the amount that the insured may ultimately recover. *See, e.g.*, *Rizzuti*, 105 P.3d at 1019 (classifying claim under subsection (7) with other claims for "denial of coverage").

Lincoln did not violate subsection (7) because it offered the full amount due under the policy—it merely required that a court determine the correct beneficiary. State law does not proscribe such conduct. *See Romas*, 947 P.2d at 759. Therefore, Lincoln was entitled to summary judgment on this claim.

**7.**

Lastly, the district court was correct to grant Lincoln summary judgment on Gail's IFCA claim, which alleged that Lincoln unreasonably denied a claim for coverage or payment of benefits. *See* Wash. Rev. Code § 48.30.015. As discussed above, Lincoln did not deny Gail's claim.

## IV.   CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED. The parties shall bear their own costs on appeal.