Filed 8/4/14  1st Amer. Warehouse Mortgage v. Topa Ins. Co. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| 1ST AMERICAN WAREHOUSE MORTGAGE, INC., et al., | B246716 |
| Plaintiffs, | (Los Angeles County Super. Ct. No. BC451031) |
| v. | |
| TOPA INSURANCE CO. et al., | |
| Defendants and Respondents; | |
| GREGORY M. BURKE, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ralph W. Dau, Judge.  Affirmed.

Gregory M. Burke, in propria persona, for Objector and Appellant.

Selman Breitman, Alan B. Yuter and James F. Henshall for Defendants and Respondents.

Gregory Burke, counsel for plaintiffs 1st American Warehouse Mortgage, Inc., doing business as Real Estate Specialists, Robert Sterling Castaneda, and Raj L. Champaneri (collectively, RES), appeals an order of sanctions awarded against him pursuant to Code of Civil Procedure section 128.7 (section 128.7).  Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.  *Complaint*

RES filed the present action against Topa Insurance Company (Topa) and Does 1 through 10[1] on December 10, 2010.  The operative complaint alleges that RES purchased

---

[1]  The Doe allegations are as follows:

"7.  Plaintiff [RES] is unaware of the true names and capacities of the Defendants named herein as Does 1 through 10 and, therefore, sues those Defendants by such fictitious names and capacities when they are ascertained.  Plaintiff shall seek leave of Court to amend this Complaint to show the true name[s] and capacities of Does 1 through 10 when their names and capacities are ascertained.  And, since each of the fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff['s] injuries and damages as herein alleged were proximately caused by said Defendants' acts, such Doe Defendants are in some manner liable to Plaintiff for the sums claimed due herein.

"8.  Plaintiff is informed and believe[s] and on that basis allege[s] that at all times mentioned herein, Defendants, and each of them, were, and remain, agents, servants, and employees of each other, acting in the course and scope of such employment, and within actual or apparent authority of such agency.

"9.  Furthermore, Plaintiff alleges, on information and belief, that at all times herein mentioned Defendants, and each of them, (a) were and remain the alter-egos of each other[,] (b) that Defendants did and still do dominate, influence and control each other[,] (c) there existed and still exists a unity of ownership between them[,] (d) the individuality and separateness of each entity was and remains non-existent[,] (e) each such entity was and remains a mere shell and naked framework which the other Defendants used and still use to conduct their business affairs[,] (f) that each such entity was and remains inadequately capitalized[,] and[] (g) that an injustice and fraud upon Plaintiff will result if the theoretical separateness of the Defendant entities is not disregarded and each such Defendant held liable for all relief being sought herein.

(Fn. continued.)

a "Real Estate Agents and Brokers Errors & Omissions Insurance policy" (the E&O policy) from Topa. When a third party sued RES for failing to properly supervise one of its agents, RES tendered the claim and defense to Topa, which denied it. As a result, RES incurred attorney fees and costs to defend the suit and suffered other damages. RES alleges that Topa's conduct gave rise to two causes of action: (1) bad faith breach of insurance contract, and (2) breach of the implied covenant of good faith and fair dealing.

### B.	Substitution of CRES and Superior for Doe Defendants

On May 4, 2012, plaintiffs filed amendments to the complaint substituting Superior Claims Services LLC (Superior) and CRES Insurance Services, LLC (CRES) for Doe defendants. Even before the complaint was served on them, on May 25, 2012, James Henshall, counsel for CRES and Superior, sent a letter to Burke, RES's attorney, requesting that Henshall's clients be dismissed from the action. Henshall noted that the complaint asserted causes of action only for breach of contract and breach of the implied covenant of good faith and fair dealing, and "[t]here are no allegations set forth indicating how CRES and Superior could have any liability related to these theories." Further, Henshall asserted there was no contractual relationship between RES and CRES, or RES and Superior, and thus there could not be a cause of action for breach of contract or breach of the implied covenant against CRES or Superior. Finally, he noted that California courts have held that no bad faith action lies against an insurer's officers, agents, and employees, such as adjusters, investigators, claim managers, or in-house counsel, even if they are responsible for the insurer's decision on a claim. Thus, Henshall requested that CRES and Superior be immediately dismissed from the action. He warned that if forced to defend the action, CRES and Superior "fully intend to seek reimbursement of any and all attorney's fees and costs incurred either by seeking

"10.	At all times mentioned herein, Defendants, and each of them, knowingly conspired, joined and participated with each other in the conduct herein alleged, and that each such Defendant is therefore liable with each other defendant for the conduct herein alleged and for the relief being sought herein."

appropriate sanctions under the California Code of Civil Procedure, or by filing a separate lawsuit for malicious prosecution and abuse of process after it has this lawsuit dismissed against them."

On August 7, 2012, Henshall sent a second letter to Burke noting that CRES and Superior recently had been served with the complaint, and warning that unless CRES and Superior were dismissed with prejudice by August 14, 2012, "CRES and [Superior] shall aggressively pursue being dismissed from this action. After they are dismissed, CRES and [Superior] intend to take all appropriate action against you and your clients in order to be reimbursed for all attorney's fees and costs related to their defense including pursuing an action against you and your clients for malicious prosecution and abuse of process." Henshall concluded: "We shall look forward to receiving a dismissal from the Plaintiffs related to CRES and [Superior]. Please note that since this frivolous lawsuit has now been served on CRES and [Superior], damages are being incurred by CRES and [Superior] at the present time, and these damages shall continue to be incurred in the future."

RES did not respond to Henshall's letters or dismiss Superior or CRES from the action. In August 2012, CRES and Superior answered the complaint and filed motions for summary judgment. RES did not oppose the summary judgment motions, and on November 26, 2012, it dismissed Superior and CRES.

C.      *Motions for Sanctions*

Superior and CRES served and filed motions for sanctions pursuant to section 128.7.[2] The motions asserted that Superior was an independent claims adjusting firm

---

[2]      Section 128.7 authorizes a court to impose sanctions against a party or its attorney if a pleading is presented primarily for an improper purpose and contains allegations and other factual contentions that lack evidentiary support. (§ 128.7, subds. (b)-(c).) Parties seeking sanctions under this section are required to serve the sanctions motion at least 21 days before filing it to allow the opposing party to correct or withdraw the offending pleading without penalty. (§ 128.7, subd. (c)(1); *Martorana v. Marlin & Saltzman* (2009)

(Fn. continued.)

4

Topa retained to investigate RES's insurance claim, and CRES was Topa's general agent. Neither Superior nor CRES was a party to the E&O policy. Superior and CRES argued that, under established law, independent claims adjusters and agents cannot be liable for breach of an insurance contract or breach of the implied covenant of good faith and fair dealing arising out of an insurance contract because they are not parties to the contract. Further, claims adjusters do not owe duties to insureds when they act on behalf of an insurance company. Therefore, RES and its attorney knew, or should have known, that there was no legal basis for asserting claims for breach of contract and breach of the implied covenant, and "[RES's] and Burke's continued efforts in maintaining this action against [Superior and CRES] can only be interpreted as a tactic used to harass [Superior and CRES] and cause [Superior and CRES] to needlessly incur further costs in this litigation." Superior therefore sought sanctions of $14,819, and CRES sought sanctions of $13,475, which they claimed were the reasonable attorney fees they incurred to defend the action and prepare their motions for summary judgment and for sanctions.

RES filed opposition to the sanctions motions on January 7, 2013, the day before they were scheduled to be heard. RES contended that it added Superior and CRES as party defendants based on "information and belief that the Defendants are agents of each other, and/or alter-egos of each other, influence and control each other and there exists an ownership between them. Plaintiffs also allege the Defendants are joint tortfeasors in the bad faith breach of insurance contract." (Internal record references omitted.)

### D.    *Order Granting Sanctions*

The trial court granted the sanctions motions on January 8, 2013. In its tentative ruling that was adopted as the order of the court, the court noted that although the sanctions motions were filed on October 16, 2012, they were unopposed as of January 3, 2013. The court explained its grant of sanctions as follows:

---

175 Cal.App.4th 685, 698.) Pursuant to this rule, Superior and CRES served the sanctions motions on September 20 and filed them on October 16, 2012.

"Plaintiffs' only causes of action alleged against defendants were for breach of contract and breach of the covenant of good faith and fair dealing. The existence of a contract between the parties is an essential element for both of these causes of action. (See CACI 303, 325.) Where non-insurer defendants are not parties to the insurance agreement 'they are not, as such, subject to an implied duty of good faith and fair dealing. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy.' (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576.) This rule 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.' (*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72-73.) The insurer's agents are not parties to the insurance contract and are not subject to the implied covenant of good faith and fair dealing. (See *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824; *Minnesota Mut. Life Ins. Co. v. Ensley* (9th Cir. 1999) 174 F.3d 977, 981 ['Under California law, an insurance agent cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing because he is not a party to the insurance contract.'].)

"In *Liberty Mut. Fire Ins. Co. v. McKenzie* (2001) 88 Cal.App.4th 681, the court upheld the trial court's imposition of sanctions where the complaint alleged causes of action for breach of contract and breach of the implied covenant of good faith against an employee of the insurance company. (*Id.* at pp. 690-692.) The court noted that, as a matter of law, an insurance employee 'cannot be sued for either breach of contract or breach of the implied covenant of good faith.' (*Id.* at p. 690.)

"Defendant [Superior] presents evidence that it is an independent claims adjusting company retained by defendant Topa. Topa retained [Superior] to assist with the claim investigation regarding the [underlying negligent supervision] action, and [Superior] recommended that Topa decline plaintiffs' claim for liability coverage. [Superior's] employee sent correspondence to plaintiffs stating Topa was denying coverage. The

6

insurance agreement lists Topa as the coverage provider and plaintiff 1ˢᵗ American as the insured. The insurance agreement does not list [Superior] as a party to the agreement.

"Following the amendment of plaintiffs' complaint, [Superior's] attorney sent a letter to plaintiffs' attorney advising him that [Superior] was not a party to the insurance contract and was only involved as an independent adjusting company. This letter provided legal authority demonstrating that [Superior] was not a proper defendant in this action. The letter requested that [Superior] be dismissed and warned of the possibility that [Superior] would seek sanctions. Plaintiffs' counsel did not respond to this letter. [Superior's] attorney sent another letter on August 7, 2012, again advising plaintiffs' counsel that the action against [Superior] was inappropriate and requesting dismissal. Plaintiffs' counsel again failed to respond to this letter.

"Defendant CRES provides a declaration stating CRES has served as a general agent for Topa since January 2003 and was acting as a general agent for Topa when the subject policy was issued. CRES did not assist with the claim investigation regarding the [underlying negligent supervision] action. The insurance agreement indicates CRES was the insurance agent.

"Following the amendment of plaintiffs' complaint, CRES's attorney sent a letter to plaintiffs' attorney advising him that CRES was not a party to the insurance contract. This letter provided legal authority supporting CRES's position. The letter requested that CRES be dismissed and warned of the possibility that defendant would seek sanctions. Plaintiffs' counsel did not respond to this letter. CRES's attorney sent another letter on August 7, 2012, again advising plaintiffs' counsel that the action against [CRES] was inappropriate and requesting dismissal. The letter warned that defense counsel would 'aggressively pursue' dismissal and would seek reimbursement of attorney's fees and costs following dismissal. Plaintiffs' counsel again failed to respond to this letter.

"Defendants' evidence sufficiently shows that plaintiffs' causes of action against defendants were not warranted by existing law and did not have evidentiary support. The evidence shows plaintiffs were aware of these issues because defense counsel provided letters with the argument that [Superior] and CRES were not proper defendants in this

7

action, as well as legal authority supporting this position, well in advance of the instant motions. Indeed, plaintiffs were made aware of these issues prior to service of summons on the moving defendants. Despite this, plaintiffs did not move to dismiss defendants until after defendants had filed answers, motions for summary judgment, and the instant motion[s] for sanctions.

"In their late-filed opposition, plaintiffs argue that the dismissal renders the instant motion[s] moot. Plaintiffs provide no authority for this position and their cited cases do not so hold. Defendants waited the statutorily-required 21 days after serving the motion[s] before filing [them]. (See Code Civ. Proc., § 128.7(c)(1).) Plaintiffs did not dismiss defendants within that 21-day period and had sufficient notice of the motion[s].

"Plaintiffs argue CRES and [Superior] were added based on information and belief that all defendants are agents or alter egos, and there exists an ownership between them. Plaintiffs alleged defendants were joint tortfeasors. Plaintiffs argue they did not have reasonable opportunity to conduct discovery.

"Even if defendants were agents of Topa, this would not support plaintiffs' claims against them for the reasons discussed above. Plaintiffs do not show that CRES or [Superior] were members of an insurance group with Topa or that they acted as the same entity as Topa, such that they may be liable for the alleged bad faith denial of the claim. [Citations.] Plaintiffs' strongest evidence is a page in the policy stating 'Welcome Policyholder!,' and CRES's insurance comparison chart and other documents. At most this evidence suggests that CRES offered insurance. This does not establish that CRES was plaintiffs' insurance provider or that CRES acted in any capacity other than as an insurance agent. The policy itself, on multiple pages, lists CRES as the agent and states that coverage is provided by Topa. Further, this evidence does not suggest that [Superior] was a party to the agreement.

"Plaintiffs next argue that defendants should not be entitled to attorney[] fees for the summary judgment motions because they were filed before the sanctions motion[s] and 'effectively negat[e] the very purpose of the safe harbor provision.' Plaintiffs present no authority for this position.

8

"Finally, plaintiffs are correct that, under section 128.7, 'monetary sanctions may not be awarded against a represented party for violation of paragraph (2) of subdivision (b).' (Code Civ. Proc., § 128.7(d)(1).) Therefore, to the extent the Court grants the motions pursuant to section 128.7(b)(2), the sanctions are imposed against plaintiffs' counsel only.

"Accordingly, the Court awards sanctions against plaintiffs' counsel of record, Gregory Burke.

"Amount of Sanctions

"Defendant [Superior] requests sanctions in the total amount of $14,819.00. [Superior] bases this amount on 50.6 hours spent defending this action at a billing rate of $240 per hour, plus an anticipated 3 hours reviewing an opposition to the instant motion and preparing a reply, 3 hours traveling to and from the hearing, and one hour appearing at the hearing. [Superior] also incurred $935.00 in filing fees, plus an additional $60.00 for the instant motion.

"Defendant CRES seeks sanctions in the total amount of $13,475.00. CRES bases this amount on 45.0 hours spent defending this action at a billing rate of $240 per hour, plus an anticipated 3 hours reviewing an opposition to the instant motion and preparing a reply, 3 hours traveling to and from the hearing, and one hour appearing at the hearing. CRES also incurred $935.00 in filing fees, plus an additional $60.00 for the instant motion.

"The total fees requested for both motions is therefore $28,294.00.

"Defendants should not each recover attorney's fees for appearance at [these] motion[s] since both motions will be heard at the same hearing. The Court therefore reduces the requested fee amount by $960.00 [4 hours [x] $240].

"Accordingly, the Court imposes sanctions in the total amount of $27,334.00." (Internal record references omitted.)

Burke timely appealed.

9

## DISCUSSION

### I.      Applicable Legal Standards

Section 128.7, subdivision (b) provides that by presenting a pleading to the court, an attorney or unrepresented party "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:

"(1)  It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"(2)  The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

"(3)  The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . ."

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.  In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence.  (§ 128.7, subd. (c).)

Whether an action is frivolous under section 128.7 "is governed by an objective standard." (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 401.)  A sanction imposed under this section "shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated. . . .  [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d).)  Monetary sanctions may not be

10

awarded against a represented party for a violation of subdivision (b)(2). (§ 128.7, subd. (d)(1).) Ordinarily, a ruling on a motion for sanctions brought under section 128.7 is reviewed under a deferential abuse of discretion standard. (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921-922.)

## II.     The Sanctions Motions Were Not Procedurally Defective

Burke contends that the proofs of service attached to the motions are invalid because they do not identify the person making the service or provide an original signature. He contends that the sanctions motions therefore are "procedurally defective." We do not agree. "'It is the fact that service was made, rather than the proof of service, that vests the court with jurisdiction to act. (*Morrissey v. Gray* [(1911)] 160 Cal. 390, 395; *Vail v. Jones* [(1930)] 209 Cal. 251, 255; *Lindley v. Lindley* [(1920)] 49 Cal.App. 631, 633.) The jurisdiction of the court does not depend upon the preservation of the proof of service but upon the fact that service has been made. (*Sichler v. Look* [(1892)] 93 Cal. 600, 608; *In re Newman* [(1888)] 75 Cal. 213, 220.)'" (*Call v. Los Angeles County Gen. Hosp.* (1978) 77 Cal.App.3d 911, 917 (*Call*), quoting *Otsuka v. Balangue* (1949) 92 Cal.App.2d 788, 791.)

In the present case, Burke urges that the proofs of service were procedurally defective, but he does not dispute that he and RES were timely served with the sanctions motions. Because service of the motions was proper, an alleged technical defect in the proof of service did not divest the trial court of jurisdiction to enter the sanctions order and is not grounds for reversal. (*Call*, *supra*, 77 Cal.App.3d at p. 917.)

## III.     RES Did Not Demonstrate a Colorable Basis for Its Contract Claims

Burke contends that the evidence RES provided in opposition to the sanctions motions demonstrates contractual relationships among RES, Superior, and CRES that the trial court ignored. He urges that the trial court therefore erred in imposing sanctions for a frivolous pleading. For the reasons that follow, we disagree.

11

*A.      Legal Authority*

Under California law, insurance adjusters and agents cannot be held liable for breaches of insurance contracts because they are not parties to those contracts. In *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566 (*Gruenberg*), after plaintiff's insurers denied his claims under fire insurance policies, the plaintiff brought claims for breach of the implied duty of good faith and fair dealing against (1) his insurers, (2) a company hired by the insurers to investigate and adjust plaintiff's insurance claims, and (3) the insurers' law firms and lawyers. (*Id*. at pp. 569, fn. 1, 573.) Plaintiff alleged that the adjusters and attorneys were agents and employees of the three insurers and were acting within the scope of their agency and employment when they committed the acts attributed to them. (*Id*. at p. 571.) The trial court sustained defendants' general demurrers, and plaintiff appealed. (*Id*. at p. 572.)

The California Supreme Court reversed the order of dismissal as to the three insurers, but affirmed as to the other defendants. As to the adjusters and attorneys, it explained: "Plaintiff alleges that Brown, the insurance adjusting firm, and its employee, Busching, and Cummins, the law firm, and its employee, Ricketts, were the agents and employees of defendant insurers and of each other and were acting within the scope of that agency and employment when they committed the acts attributed to them. However, plaintiff contends that these non-insurer defendants breached only the duty of good faith and fair dealing . . . . Obviously, the non-insurer defendants were not parties to the agreements for insurance; *therefore, they are not, as such, subject to an implied duty of good faith and fair dealing*. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy. (*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72.) This rule, as was explained in *Wise* (at pp. 72-73) 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.' (See also *Mallard v. Boring* (1960) 182 Cal.App.2d 390, 393.) Accordingly, the judgment of dismissal in favor of the non-

12

insurer defendants must be affirmed." (*Gruenberg*, *supra*, 9 Cal.3d at p. 576, italics added; see also *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 512 [applying *Gruenberg*].)

The court reached a similar result with regard to insurance agents in *Minnesota Mutual Life Ins. Co. v. Ensley*, *supra*, 174 F.3d 977 (*Minnesota Mutual*). There, the plaintiff sued an insurance company and agent for breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. The Ninth Circuit affirmed a grant of summary judgment for the agent, holding that under California law, an insurance agent cannot be held liable for breach of an insurance contract or breach of the implied covenant of good faith and fair dealing applicable to insurers. It explained: "The [agents] were acting as the agents of Minnesota Mutual; they were not a party to the insurance contract. The [agents] cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing as a matter of law." (*Id*. at p. 981; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1997) ¶¶ 12:98-12:99, pp. 12A-34.1 to 12A-35 (rev. # 1, 2012) ["Even if they are responsible for the insurer's decision to refuse settlement, *no bad faith action lies* against the insurer's officers, agents and employees (e.g., adjusters, investigators, claims managers, house counsel, etc.) . . . [¶] . . . The action based on breach of the implied covenant *depends on a contractual relationship* between the parties. The insurer's agents and employees are not parties to the insurance contract."].)

### B.     Analysis

Burke apparently concedes that *Gruenberg* and *Minnesota Mutual* correctly state California law, but he urges that they do not apply here because the evidence "demonstrates a contractual relationship between appellant and respondent that the trial court ignored." In support, Burke relies on several documents produced to RES on February 27, 2012, along with a "better copy" of the insurance policy. These documents are:

13

(1)     One page document entitled, "Welcome Policyholder!"  The document states, in part:  "Congratulations on joining the CRES Real Estate Errors & Omissions Program.  We are confident that you will continue to find our pricing competitive, our coverage excellent and our service outstanding."  The document does not identify RES as a policyholder or indicate in any way that it is relevant to the E&O policy Topa issued to RES.

(2)     Declarations page, dated 2/24/2012, identifying the "agent" as "CRES Insurance Services, LLC."

(3)     Amendatory Endorsement Per Transaction Reporting, dated 2/24/12, stating that the "transaction report and transaction charges shall be sent to [Topa] through:  [¶]  CRES Insurance Services, LLC."

(4)     *Blank* "Seller's Protection Plan Certificate," apparently issued by CRES. This document suggests that CRES offered a "Seller's Protection Plan," but not that RES held such a plan issued by CRES.

(5)     "CRES Risk Management Program Member Enrollment Certificate," dated 2/24/2012, issued to "1st American Warehouse Mortgage, Inc.  [¶]  D.B.A. Real Estate Specialist/Real Estate Specialist Escrow Division."  The document states:  "The above referenced member is eligible for the following services listed on the risk management program plan document:  [¶]  . . . Phone Consultations  [¶]  . . . Contact and Document Reviews  [¶]  . . . Website  [¶]  . . . Attorney Letters  [¶]  . . . Deductible Reduction  [¶] . . . Seminars  [¶]  . . . Case Alerts  [¶]  . . . Sample Documents."  The document identifies CRES as the "agent" and states:  "The services provided through the risk management program *are not insurance products and are not a part of any policy of insurance*." (Italics added.)

(6)     Document comparing CRES insurance to "other" insurance (insurance comparison page).  Among other things, this page says that CRES "Covers Innocent Parties for Fraud Perpet[r]ated by agents."

(7)     April 7, 2009 letter from Superior to RES, identifying Superior as the "claims adjusting company for the CRES Insurance Services, LLC Real Estate Agents

14

and Brokers Errors and Omissions Program." The letter says that Superior "received your tender of defense of the claim being made against" RES, and "[b]ased on our investigation, TOPA Insurance Company hereby denies your tender."

Burke contends that these documents evidence a contract between CRES and RES to provide risk management services. The trial court correctly concluded otherwise. *None* of these documents evidences a contract between Superior and RES. As to CRES, the CRES Risk Management Program Member's Enrollment Certificate (certificate) purports to evidence a contract of some kind between CRES and RES, but it expressly is not evidence of a contract *of insurance* between these parties. Because the only actionable conduct alleged in the complaint are alleged breaches of an insurance policy—specifically, the E&O policy issued by Topa—the risk management certificate is irrelevant.

Burke also contends that the documents evidence a "CRES Insurance Policy" that "provides coverage for fraud perpet[r]ated by agents." Not so. While the insurance comparison page suggests that CRES *offered* insurance policies that covered fraud perpetrated by agents, it does not suggest that RES ever purchased such a policy. Indeed, the insurance comparison page nowhere lists RES as an insured, and it is not a contract of insurance.

Finally, Burke contends that the documents demonstrate that Superior "is nothing more than the alter ego of CRES." We do not agree that the documents so demonstrate, but even if they did, an alter ego relationship between CRES and Superior does not suggest that either company can be liable for an alleged contractual breach *by Topa.*

## IV.    RES Never Alleged Any Other Theories Against Superior or CRES

Burke asserts that even if RES's contract claims were without merit, the trial court nevertheless erred in awarding sanctions because had RES been given more time, it would have conducted discovery that would have allowed it to amend the complaint to allege tort theories against CRES and Superior, including negligence, negligent

misrepresentation, and fraud. For the reasons that follow, Burke's contention is without merit.

Reduced to its essentials, Burke's contention is that he should not have been sanctioned for asserting frivolous claims against CRES and Superior because, had he been given additional time to conduct discovery, he might have been able to discover facts that would have allowed him to assert *other*, *nonfrivolous claims*. But our legal system does not allow parties or their attorneys to sue first and investigate later. As our Supreme Court said in a different context, the law "cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation" that their conduct caused harm and "who thereafter try to learn through discovery whether their speculation was well-founded." (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 81.) Section 128.7 requires counsel to investigate *before* filing suit, not the other way around.

Burke also asserts that he was not given a reasonable opportunity to investigate the claims and amend the complaint before facing motions for summary judgment and for sanctions, and that his failure to investigate was reasonable under the circumstances. Burke does not explain why his failure to investigate before suing Superior and CRES was reasonable or, indeed, what "circumstances" made prefiling investigation impossible. Burke's assertion, moreover, wrongly assumes that he and RES could not have investigated the facts he says were relevant to potential claims against Superior and CRES—i.e., whether "CRES and [Superior] were members of an insurance group with Topa," "CRES and [Superior] were alter egos of Topa," "Respondents were acting outside the scope of [their] authority," or "Respondents acted with gross negligence in the unreasonable delay (18 months) in denying the tender while the underlying litigation was pending"—during the 17 months between the filing of the complaint and the amendment naming Superior and CRES as defendants. To the extent potential claims against Superior and CRES flowed from their alleged relationships with Topa, those relationships certainly could have been explored through party discovery (interrogatories, document requests, requests for admission, and depositions) directed at Topa. Further, there were many means of obtaining discovery from Superior and CRES short of suing them. For

16

example, Code of Civil Procedure section 2020.010 provides: "(a) Any of the following methods may be used to obtain discovery within the state from a person who is not a party to the action in which the discovery is sought: [¶] (1) An oral deposition under Chapter 9 (commencing with Section 2025.010). [¶] (2) A written deposition under Chapter 11 (commencing with Section 2028.010). [¶] (3) A deposition for production of business records and things under Article 4 (commencing with Section 2020.410) or Article 5 (commencing with Section 2020.510). [¶] (b) Except as provided in subdivision (a) of Section 2025.280, the process by which a nonparty is required to provide discovery is a deposition subpoena." (See *Hawkins v. TACA Internat. Airlines, S.A.* (2014) 223 Cal.App.4th 466, 476 [noting availability of nonparty discovery to discover facts necessary to assert claims against potential additional defendants].)

If Burke had sought discovery relevant to CRES and Superior prior to suing them, he could have ascertained whether there were grounds for asserting nonfrivolous claims against them. Regardless, his failure to have a factual basis for bringing the claims he brought, i.e., frivolous claims, supports the trial court's award of sanctions.

**V.    The Trial Court Did Not Abuse Its Discretion in Awarding All Fees Incurred in the Action**

Citing section 128.7, subdivision (c)(1), Burke argues that the court erred in awarding Superior and CRES all fees and costs they incurred in defending the action. Subdivision (c)(1) provides that the court may award attorney fees incurred "in presenting or opposing the motion" for sanctions—and were it the only fee provision of section 128.7, we might agree with Burke that the fee award was improper. However, section 128.7, subdivision (d), which Burke does not discuss, provides that the court may also award "*some or all* of the reasonable attorney's fees and other expenses incurred as a direct result of the violation"—precisely what the trial court did in this case.

Burke also argues that the trial court erred in awarding duplicative attorney fees. Burke does not identify which fees he believes are duplicative or provide any factual support for his claim, and thus he has not met his appellate burden to affirmatively

17

demonstrate error.  (E.g., *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1272 [""""An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority."""].)  In any event, it is well established that the trial judge is the """"best judge of the value of professional services rendered in his court."""  (*PLCM Group*, *Inc*. *v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  Here, the trial court expressly considered the issue of duplicative fees and denied a portion of the fee request it found duplicative.  The resulting award was not an abuse of discretion.

## DISPOSITION

The sanctions order is affirmed.  Respondents are awarded their appellate costs.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.[*]

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.